_____
Honorable Hilary L. Barnes
United States Bankruptcy Judge

Entered on Docket
April 09, 2025

_____

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No.: 24-50176-hlb |
| FLIRTEY HOLDINGS, INC.,<br>aka SKYDROP, | Chapter 7 |
| Debtor. | Hearing Date: February 25, 2025<br>Hearing Time: 2:30 p.m. |

**ORDER APPROVING AND AUTHORIZING SALE OF ASSETS
FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES**

Upon the *Trustee's Motion for Entry of an Order Approving and Authorizing Sale of Assets Free and Clear of Liens, Claims, and Encumbrances and Granting Related Relief* [Docket No. 32] (the "Motion")[1] filed by Christina Lovato, the chapter 7 trustee ("Trustee") of the bankruptcy estate of Flirtey Holdings, Inc. aka SkyDrop (the "Debtor") seeking, among other things, entry of this order (the "Sale Order"), pursuant to sections 105 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing and approving the sale of the Purchased Assets to the Drone Company Liquidating Trust, or its permitted assignee (the "Purchaser"), as reflected in the Asset Purchase Agreement; and the Court having conducted a hearing (the "Sale

---
[1] Capitalized terms used but not otherwise defined herein have the meanings given to them in the Asset Purchase Agreement (as defined below).

Hearing") to consider the sale of the Purchased Assets (the "Sale") on February 25, 2025, at which time all interested parties had an opportunity to be heard with respect to the Motion and the Sale; and the Court having reviewed and considered (i) the Motion and the exhibits thereto, (ii) the Asset Purchase Agreement, dated as of March 31, 2025, and related exhibits and schedules (filed at Docket No. 33-1), a copy of which is attached hereto as **Exhibit 1** (together, including related and ancillary documents, agreements, and instruments, as may be modified, amended, or restated from time to time, such as the Related Agreements, the "Asset Purchase Agreement"), by and between the Purchaser and the Trustee, as seller (in such capacity, the "Seller"), whereby the Seller has agreed to sell all of the estate's right, title and interest in and to the Purchased Assets to the Purchaser, on the terms and conditions set forth in the Asset Purchase Agreement and this Sale Order, and (iii) any objections, statements, reservations of rights, or other filings in respect of the Motion, and (iv) the record of the Sale Hearing, including the arguments and representations of counsel made, and the evidence proffered or adduced, at the Sale Hearing; and it appearing that due and sufficient notice of the Motion, the Asset Purchase Agreement, and this Sale Order have been provided; and all objections, statements, reservations of rights, or other filings in respect of the Sale Motion having been withdrawn, resolved, or overruled; and, after due deliberation, it appearing that the relief granted herein is in the best interests of the estate and its creditors and all parties in interest; and good and sufficient cause appearing therefor, it is hereby

      **FOUND AND DETERMINED:**

      A.     The findings and conclusions set forth herein and stated on the record at the Sale Hearing constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014.

      B.     To the extent that any findings of fact constitute conclusions of law, they are adopted as such. To the extent any conclusions of law constitute findings of fact, they are adopted as such.

**Jurisdiction and Venue**

C.       This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in the Court under 28 U.S.C. §§ 1408 and 1409.

D.       The statutory and legal predicates for the relief sought in the Motion and this Sale Order are sections 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 9014.

**Secured Obligations**

E.       In or around October 2022, Debtor entered into that certain Note Purchase Agreement dated (the "Note Purchase Agreement"), Security Agreement, and Patent, Copyright and Trademark Security Agreement dated (collectively, as amended, supplemented or otherwise modified from time to time, the "Prepetition Secured Note Purchase Agreements") with the holders of the 6% Secured Convertible Promissory Notes (the "Secured Notes") issued by the Debtor (including successors and assigns, and each of their respective agents, members, managers, officers, directors, and employees, collectively, the "Prepetition Secured Noteholders") in accordance with the Note Purchase Agreement (and together with all other related finance and security documents, the "Prepetition Secured Note Documents").

F.       Pursuant to the Prepetition Secured Note Documents, the Debtor granted to the Prepetition Secured Noteholders, to secure Debtor's obligations under the Secured Notes, a continuing first-priority lien and security interest in and on the Debtor's right, title and interest in and to (i) the Intellectual Property Collateral (as defined in the Prepetition Secured Note Documents), and (ii) the proceeds thereof, whether now owned or existing or hereafter acquired or arising, regardless of where located. All liens granted under and pursuant to the Prepetition Secured Note Documents shall collectively be referred to herein as the "Prepetition Liens." All collateral referred to in this paragraph F shall be referred to herein as the "Prepetition Collateral."

G.    On May 2, 2024, Jordan Green, in his capacity as the noteholder representative, filed a proof of claim number 3 in the Chapter 7 Case on behalf of the Prepetition Secured Noteholders in an amount not less than $8,783,697.85, plus other unliquidated amounts, reflecting the amounts owing under the Prepetition Secured Note Documents as the Petition Date (the "Prepetition Secured Obligations")  The amounts owing to the Secured Parties has increased postpetition pursuant to and under the Prepetition Secured Note Documents (the "Postpetition Secured Obligations", and, together with the Prepetition Secured Obligations, the "Secured Obligations").

H.    The Seller has acknowledged, *inter alia*, the priority, validity, and extent of the Prepetition Liens in the Prepetition Collateral.  In addition, the Seller acknowledged that the Debtor and its estate were obligated to the Prepetition Secured Noteholders in the amount of not less than $8,783,697.85 on account of the Secured Obligations.

I.    The Purchased Assets constitute Prepetition Collateral securing the Secured Obligations.

## Notice

J.    As evidenced by the certificates of service filed with the Court [Docket No. 35], and based upon the Court's findings at the Sale Hearing, due, proper, timely, adequate, and sufficient notice of the Motion, the Sale Hearing, the Sale pursuant to this Sale Order and the Asset Purchase Agreement has been provided in accordance with sections 102(1) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 9014, to each party in interest entitled to such notice.  Notice was good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, the Asset Purchase Agreement, the Sale, the Sale Order and the Sale Hearing is, or shall be, required.

## The Sale Process

K.    The estate assets, excluding certain cash, cash equivalents, claims, and causes of action, consist primarily of the Purchased Assets.

L.    The Trustee determined, in a proper exercise of her business judgment, that the most

suitable course of action to liquidate the estate is the prompt sale of the Purchased Assets to the Purchaser.

     M.     The Purchased Assets are property of the Debtor's bankruptcy estate under 11 U.S.C. § 541.

     N.     The Trustee marketed the Purchased Assets and conducted the Sale of the Purchased Assets in a commercially reasonable manner.

### Sale Transaction

     O.     The Trustee, as Seller, and the Purchaser shall enter into the Asset Purchase Agreement, which contemplates the Sale of the Purchased Assets to Purchaser, on the terms and conditions of the Asset Purchase Agreement, free and clear of claims, liens and liabilities other than Permitted Liens[2] (collectively, "Encumbrances"), to the fullest extent permitted by any applicable Law (including free and clear of contingent Claims to the fullest extent permitted by any applicable Law).

     P.     The Purchase Price for the Purchased Assets is $14,724.44, consisting of $5,000.00, the Trustee's counsel's fees and expenses, and the amount of the Secured Obligations, which shall be deemed released and extinguished against the Debtor and its estate after the Closing.

     Q.     Based upon the information provided by the Purchaser to date, the Asset Purchase Agreement was negotiated, proposed, and entered into by and among the Trustee and Purchaser without collusion, in good faith, and from arm's length bargaining positions.

     R.     The Trustee demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale of the Purchased Assets because, among other reasons, (i) the Asset Purchase Agreement constitutes the highest or otherwise best offer for the Purchased Assets, (ii) the Asset Purchase Agreement and the Closing thereon will present the best opportunity to

---

[2]   For any and all purposes of this Sale Order, "Permitted Liens" shall mean only those Permitted Liens that are permitted to encumber the Purchased Assets post-Closing, and shall exclude any Permitted Liens that are to be released on or before Closing, as to each of the foregoing, pursuant to the terms and conditions of the Asset Purchase Agreement.

realize the value of the Purchased Assets, and (iii) any other transaction would not have yielded as favorable an economic result.

S.     The Purchaser is purchasing the Purchased Assets in good faith, is a good-faith purchaser within the meaning of section 363(m) of the Bankruptcy Code, and is not an "insider" (as defined under section 101(31) of the Bankruptcy Code) of the Debtor, and therefore is entitled to the full benefits and protections of section 363(m) of the Bankruptcy Code, and otherwise has proceeded in good faith in all respects in connection with the Sale in that: (i) the Purchaser recognized that the Trustee was free to deal with any other party interested in acquiring the Purchased Assets; (ii) all payments to be made by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the Sale have been disclosed; (iii) the Purchaser has not violated section 363(n) of the Bankruptcy Code by any action or inaction; and (iv) the negotiation and execution of the Asset Purchase Agreement, including the Sale contemplated thereby, were at arms'-length and in good faith.

T.     The Asset Purchase Agreement and the transactions contemplated thereby cannot be avoided under section 363(n) of the Bankruptcy Code.  The Trustee and the Purchaser and their respective agents, representatives, and affiliates have not engaged in any conduct that would cause or permit the Asset Purchase Agreement or the consummation of the transactions contemplated thereby to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

U.     The consideration provided by the Purchaser pursuant to the Asset Purchase Agreement: (i) is fair and adequate, and constitutes reasonably equivalent value, under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia (including the Uniform Fraudulent Transfer Act and its equivalents); and (ii) will provide a greater recovery for the Debtor's estate and creditors than would be provided by any other reasonably, practicable available alternative.

V.       The Purchaser would not have entered into the Asset Purchase Agreement and will not consummate the transaction described therein, thus adversely affecting the estate and its creditors, if the sale of the Purchased Assets was not free and clear of all Encumbrances to the fullest extent permitted by any applicable Law (including free and clear of contingent Claims to the fullest extent permitted by any applicable Law).

W.      The Trustee may sell the Purchased Assets free and clear of all Encumbrances against the Debtor, the estate, or any of the Purchased Assets (unless otherwise assumed in, or permitted by, the Asset Purchase Agreement) because, in each case, one or more of the standards set forth in section 363(f) of the Bankruptcy Code has been satisfied. Those holders of Encumbrances against the Debtor, the estate, or any of the Purchased Assets who did not object, or who withdrew their objections, to the Sale or the Motion are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of such Encumbrances who may have been able to object fall within one or more of the other subsections of section 363(f).  All other holders of Encumbrances could be compelled in a legal or equitable proceeding to accept money satisfaction of such claim or interest, or otherwise fall within section 363(f) of the Bankruptcy Code.

X.       Except as specifically set forth in this Sale Order and the Asset Purchase Agreement, the Closing will not subject the Purchaser to any debts, liabilities, obligations, commitments, responsibilities, or claims of any kind or nature whatsoever, whether known or unknown, contingent or liquidated, or otherwise, existing as of the Closing, of or against the Debtor, the estate or any other person by reason of such transfer based on any legal or equitable theory, including liabilities based on any theory of antitrust or successor or transferee liability.

Y.       The Trustee has, upon entry of this Order and pursuant to section 704 of the Bankruptcy Code, (i) full power and authority to execute and deliver the Asset Purchase Agreement, and (ii) taken all action necessary to authorize and approve the Asset Purchase Agreement and the consummation of the transaction contemplated thereby. No consents or approvals, other than those expressly provided

for in the Asset Purchase Agreement, are required for the Trustee to consummate the Sale, execute the Asset Purchase Agreement, or consummate the transaction contemplated thereby.

Z.        To maximize the value of the Purchased Assets it is essential that the Sale occur within the time constraints set forth in the Asset Purchase Agreement. Time is of the essence in consummating the Sale. Given all of the circumstances of the Chapter 7 Case and the adequacy and fair value of the Purchase Price and other consideration under the Asset Purchase Agreement, the proposed Sale constitutes a reasonable and sound exercise of the Trustee's business judgment and should be approved.  Accordingly, cause exists to waive the stay to the extent necessary, as contemplated by Bankruptcy Rules 4001(a), and 6004(h) to permit the immediate effectiveness of this Sale Order and permit the Closing as soon as reasonably practicable.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT**:

**General Provisions**

1.        The relief requested in the Motion, is **GRANTED** as set forth herein and on the record of the Sale Hearing, which is incorporated herein as if fully set forth in this Sale Order.

2.        All objections to, statements or reservations of rights regarding, or other responses to the Motion or the relief requested therein, the Asset Purchase Agreement, the Sale, the entry of this Sale Order, the relief granted herein, or the occurrence of the Closing, that have not been withdrawn, waived, adjourned, or settled by inclusion in this Sale Order, announcement during the Sale Hearing, or by stipulation filed with the Court, including, without limitation, any and all reservations of rights included in any such objection or otherwise, are hereby denied and overruled on the merits with prejudice. Those parties who did not object or withdrew their objections to the Motion or the entry of this Sale Order, are deemed to have consented to the relief granted herein for all purposes, including without limitation, pursuant to section 363(f)(2) of the Bankruptcy Code.

**Approval of the Sale Transaction**

3.        The Asset Purchase Agreement, the related documents and instruments contemplated

therein, and all of the terms and conditions thereof are approved in all respects. The failure to specifically include any particular provision of the Asset Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that all the terms and conditions of the Asset Purchase Agreement be authorized and approved in their entirety as if incorporated at length herein.

4.    The Trustee's entry into the Asset Purchase Agreement and any Closing on the transaction contemplated thereunder are approved pursuant to sections 105(a), 363 and 704 of the Bankruptcy Code.

5.    The Trustee is authorized and directed under sections 105(a) and 363 of the Bankruptcy Code to take any and all actions necessary or appropriate to (a) consummate and close the Sale pursuant to and in accordance with the terms and conditions of this Sale Order and the Asset Purchase Agreement; (b) transfer and assign all right, title, and interest of the bankruptcy estate to the Purchased Assets in accordance with the terms and conditions of this Sale Order and the Asset Purchase Agreement; and (c) execute and deliver, perform under, consummate, and implement this Sale Order and the Asset Purchase Agreement and all additional instruments and documents that may be reasonably necessary or desirable to implement this Sale Order, the Asset Purchase Agreement and the Sale, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by this Sale Order and the Asset Purchase Agreement. Execution and delivery by the Trustee under Bankruptcy Rule 7070 shall have the same effect as if done by the party ordered to execute and deliver such document, but who failed to comply with this Sale Order within a reasonable amount of time after written request by the Trustee (the "Non-Compliant Party"). The Trustee shall have no liability or responsibility for any liability or other obligation of or to the Non-Compliant Party arising under or related to the Trustee's execution and delivery of such documents; and all parties, including but not limited to the Non-Compliant Party, are prohibited from asserting, prosecuting, or otherwise pursuing any claim against the Trustee arising from execution and delivery of such

documents.

**Transfer of the Purchased Assets to Purchaser Free and Clear of Encumbrances**

6.        Pursuant to sections 105(a), 363(b), 363(f) and 365(f) of the Bankruptcy Code, upon the Closing the Purchased Assets shall be transferred to Purchaser free and clear of all Encumbrances accruing, arising, or relating thereto any time prior to the Closing to the fullest extent permitted by any applicable Law (including free and clear of contingent Claims to the fullest extent permitted by any applicable Law).  The Purchase Price constitutes valid and proper consideration pursuant to sections 363(b) and 363(k) of the Bankruptcy Code.

7.        Nothing in this Sale Order or in the Asset Purchase Agreement releases, nullifies, precludes, limits, or enjoins the enforcement of any police or regulatory power of a governmental unit (as defined in 11 U.S.C. § 101(27)) that any entity would be subject to as the post-sale owner, co-owner, tenancy-in-common interest holder, or operator of property after the Closing; provided however, that this Sale Order approves the Sale of the Purchased Assets free and clear of any and all Encumbrances in respect of the Purchased Assets, the Debtor, the Debtor's estate or the Seller, other than Permitted Liens, to the fullest extent permitted by any applicable Law (including free and clear of contingent Claims to the fullest extent permitted by any applicable Law).  Nothing in this Order shall relieve any entity from any obligation to address or comply with information requests or inquiries from any governmental unit.

8.        All parties-in-interest, including all debt holders, equity holders, governmental, tax, and regulatory authorities, lenders, trade, and other creditors, (a) holding claims against the Debtor or the estate, whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated, accruing or arising before the Closing or (b) with Encumbrances in the Purchased Assets existing before the Closing, are prohibited from asserting, prosecuting, or otherwise pursuing such claims or Encumbrances against the Purchaser or any Purchased Assets.

9.      The Sale of the Purchased Assets pursuant to this Sale Order shall vest the Purchaser with valid and indefeasible title to the Purchased Assets and shall be a legal, valid, and effective transfer of the Purchased Assets, free and clear of all Encumbrances to the fullest extent permitted by any applicable Law (including free and clear of contingent Claims to the fullest extent permitted by any applicable Law).   Notwithstanding the foregoing, or anything to the contrary, however, (i) Permitted Liens shall be assumed by Purchaser at Closing and, therefore, shall be assertable against Purchaser and the Purchased Assets post-Closing, and (ii) Excluded Assets and Excluded Liabilities are not part of the Sale and shall remain assets or liabilities of the Debtor's estate post-Closing.

10.     All entities that are presently, or on the Closing may be, in possession of some or all of the Purchased Assets to be sold, transferred, or conveyed (wherever located) to the Purchaser pursuant to this Sale Order and the Asset Purchase Agreement are hereby directed to surrender possession of the Purchased Assets to the Purchaser on the Closing Date.

## Miscellaneous Provisions

11.     The Purchase Price for the Purchased Assets under the Asset Purchase Agreement is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code or other applicable law.   The Asset Purchase Agreement was not entered into, and the Sale is not being consummated, for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or any other applicable non-bankruptcy law.

12.     This Sale Order (a) is and shall be effective as a determination that, on the Closing, all Encumbrances existing against any Purchased Assets before the Closing have been unconditionally released, discharged, and terminated as to the Purchased Assets and (b) is and shall be binding on, and shall govern acts of, all entities, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of fees, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities, who may be required by operation of law, the duties of their office, or contract, to accept, file, register

or otherwise record or release any documents or instruments that reflect the Purchaser is the owner of the Purchased Assets free and clear of Encumbrances. Each federal, state, and local governmental agency or department is hereby directed to accept all documents and instruments necessary and appropriate to consummate the transaction contemplated by the Asset Purchase Agreement.

13.    The Purchaser is not, and shall not be deemed to, (a) be the successor to the Debtor or its estate, (b) have, *de facto* or otherwise, merged with or into the Debtor or its estate, or (c) be a mere continuation, alter ego or substantial continuation of the Debtor or the estate, or the enterprise of the Debtor or the estate, in each case, under any theory of law or equity, including, but not limited to, as a result of any action taken in connection with this Sale Order, the Asset Purchase Agreement or any of the transactions or documents ancillary thereto or contemplated thereby or in connection with the acquisition of the Purchased Assets. Subject to the Permitted Liens and other terms and conditions of the Asset Purchase Agreement, the Purchaser shall not be liable for any claims against the Trustee, Seller, Debtor or estate, and the Purchaser shall have no successor, transferee, or vicarious liabilities of any kind or character, whether known or unknown, now existing or hereafter arising, whether fixed or contingent, with respect to the Trustee, Seller, Debtor or estate or any obligations of any of the foregoing arising before the Closing.

14.    Subject to the Permitted Liens and other terms and conditions of the Asset Purchase Agreement, the transfer of the Purchased Assets pursuant to the Asset Purchase Agreement and this Sale Order shall not subject the Purchaser to any claim, cause of action, indebtedness, or other liability with respect to the business or operation of the Debtor or the estate before the Closing or by reason of such transfer under the Bankruptcy Code or applicable federal and state law, based, in whole or in part, directly or indirectly, on any theory of law or equity, including any theory of equitable subordination, successor or transferee liability, or vicarious liability.

15.    No person or entity shall take (or fail to take) any action to prevent, enjoin, or otherwise interfere with the Closing and consummation of the transactions contemplated in or by the Asset

Purchase Agreement or this Sale Order.

16.     Upon consummation of the Sale, if any person or entity that has filed financing statements, mortgages, Litigation, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Encumbrances against or in the Purchased Assets shall not have delivered to the Trustee prior to the Closing Date, in proper form for filing and executed by the appropriate parties, amendments, termination statements, instruments of satisfactions, releases of all Encumbrances that the person or entity has with respect to the Purchased Assets (unless otherwise assumed in, or permitted by, the Asset Purchase Agreement), or otherwise, then (a) the Trustee is hereby authorized to coordinate with such person or entity to do so for seven days and thereafter, if still not completed, to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Purchased Assets, and (b)  the Purchaser is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Encumbrances against or in the Purchased Assets of any kind or nature (except as otherwise assumed in, or permitted by, the Asset Purchase Agreement); provided that notwithstanding anything in this Sale Order or the Asset Purchase Agreement to the contrary, the provisions of this Sale Order shall be self-executing, and neither the Trustee nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Sale Order.  For the avoidance of doubt, upon consummation of the Sale, to the extent not completed pursuant to (a) above, then the Purchaser is authorized to coordinate with such person or entity seven days to and thereafter, if still not completed, file termination statements, lien terminations, or other amendments in any required jurisdiction to remove and record, notice filings or financing statements recorded to attach, perfect, or otherwise notice any Encumbrances that are extinguished or otherwise released pursuant to this Sale Order under section 363(f) of the Bankruptcy Code.

17.    The Asset Purchase Agreement may be modified, amended, or supplemented through a written document signed by the parties in accordance with the terms thereof without further order of the Court, _provided_ that any such modification, amendment, or supplement is neither material nor changes the economic substance of the transactions contemplated under Asset Purchase Agreement and Sale Order.

18.    The Trustee is authorized and directed under section 363(b)(1) of the Bankruptcy Code to perform all of her obligations in connection with the Asset Purchase Agreement and this Sale Order in accordance with the terms and conditions thereof and to execute such documents and take such other actions necessary to effectuate the Sale transaction.

19.    As a good-faith purchaser of the Purchased Assets, and that the Purchaser has not colluded with any other parties interested in the Purchased Assets:

      a.    The Sale is undertaken by the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the Sale free and clear of all Encumbrances unless otherwise assumed in, or permitted by, the Asset Purchase Agreement), unless such authorization and consummation of such Sale are duly stayed pending such appeal prior to Closing. The Purchaser is a good-faith Purchaser within the meaning of section 363(m) of the Bankruptcy Code, and as such is entitled to the full benefits and protections of such section.

      b.    The sale of the Purchased Assets may not be avoided pursuant to section 363(n) of the Bankruptcy Code.

20.    No bulk sales law or similar law shall apply in any way to the transactions contemplated by the Sale, the Asset Purchase Agreement, the Motion, or this Sale Order. The assignment, transfer and/or sale of the Purchased Assets: (i) is in exchange for the Purchase Price and so no withholding of U.S. federal income Tax pursuant to the IRC is required, and (ii) constitutes a bankruptcy sale,

casual sale or occasional sale, and so is exempt from state sales and use Tax or other Transfer Tax.

21.     The Purchaser shall succeed to and control any and all rights, claims, causes of action and defenses in respect of any privilege or confidentiality that relates to any of the Purchased Assets or Permitted Liens.

22.     This Sale Order and the Asset Purchase Agreement shall be binding in all respects upon all parties in interest, creditors of (whether known or unknown), and holders of equity interests in, the Debtor or the estate, any holders of claims or liens in, against, or on all or any portion of the Purchased Assets, the Purchaser, the Debtor, its estate, their respective affiliates and subsidiaries, and all successors and assigns of the foregoing.

23.     To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Motion or in the Chapter 7 Case, the terms of this Sale Order shall govern.

24.     To the extent there are any inconsistencies between the terms of this Sale Order and the Asset Purchase Agreement, the terms of this Sale Order shall govern.

25.     Notwithstanding the provisions of the Bankruptcy Rules or the Local Rules, this Sale Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14) day stay provided in Bankruptcy Rules 6004(h) is hereby expressly waived and shall not apply.

26.     This Court shall retain jurisdiction, including after the closing of the Chapter 7 Case, to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Asset Purchase Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtor or estate is a party or which has been assumed and assigned to the Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale.

SCHEDULE 2.1

Purchased Assets

The following Intellectual Property and other assets and all rights, claims, causes of action, rights of recovery, and goodwill associated therewith:

ISSUED PATENTS AND PENDING PATENT APPLICATIONS

| Flirtey Ref | Invention Title | Country | Application No. | Application Priority Date | Grant/Issue No. | Grant/Issue Date | Status | Applicant/Owner |
|---|---|---|---|---|---|---|---|---|
| EP8.1 | Windshield | European Patent Office | 18779954.9 | 2018-09-13 | | | Application Allowed | Flirtey Holdings, Inc. |
| EP7.0 | Beyond LoS Detection System | European Patent Office | 18779953.1 | 2018-09-13 | | | Application Published | Flirtey Holdings, Inc. |
| EP8.0 | Package Delivery | European Patent Office | 19783765.1 | 2019-09-13 | | | Examination in Progress | Flirtey Holdings, Inc. |
| EP6.0 | Delivery Surface Detection | European Patent Office | 18780281.4 | 2018-09-13 | | | Examination in Progress | Flirtey Holdings, Inc. |
| US7.0 | Beyond LoS Detection System | United States of America | 17/674,249 | 2022-02-17 | | | Examination in Progress | Flirtey Holdings, Inc. |
| US8.1 | Windshield | United States of America | 16/817,412 | 2020-03-12 | | | Examination in Progress | Flirtey Holdings, Inc. |
| EP8.2 | Emergency UAV | European Patent Office | 19795065.2 | 2019-09-13 | | | Examination in Progress | Flirtey Holdings, Inc. |
| US8.0 | Package Delivery | United States of America | 17/198,083 | 2021-03-10 | 12,154,060 | 2024-11-26 | Issue Notice Received | Flirtey Holdings, Inc. |
| US2 | Padding | United States of America | 17/113,896 | 2020-12-07 | 12,084,180 | 2024-09-10 | Granted/Issued | Flirtey Holdings, Inc. |
| US8.2 | Emergency UAV | United States of America | 17/199,154 | 2021-03-11 | 12,049,328 | 2024-07-30 | Granted/Issued | Flirtey Holdings, Inc. |
| US6.0 | Delivery Surface Detection | United States of America | 16/817,427 | 2020-03-12 | 12,037,117 | 2024-07-16 | Granted/Issued | Flirtey Holdings, Inc. |
| EP2 | Padding | Germany | 19736853.3 | 2019-06-05 | EP3802317 | 2024-01-31 | Granted/Issued | Flirtey Holdings, Inc. |
| EP2 | Padding | France | 19736853.3 | 2019-06-05 | EP3802317 | 2024-01-31 | Granted/Issued | Flirtey Holdings, Inc. |
| EP2 | Padding | United Kingdom | 19736853.3 | 2019-06-05 | EP3802317 | 2024-01-31 | Granted/Issued | Flirtey Holdings, Inc. |
| US3.1 | Delivery Mechanism | United States of America | 16/687,427 | 2019-11-18 | 11,840,333 | 2023-12-12 | Granted/Issued | Flirtey Holdings, Inc. |
| US8.3 | Centering Mechanism | United States of America | 16/817,415 | 2020-03-12 | 11,713,136 | 2023-08-01 | Granted/Issued | Flirtey Holdings, Inc. |
| EP1.1 | Parachute Deployment System for an Unmanned Aerial Vehicle | Germany | 16856325.2 | 2016-10-14 | EP3362356 | 2023-06-14 | Granted/Issued | Flirtey Holdings, Inc. |
| EP1.1 | Parachute Deployment System for an Unmanned Aerial Vehicle | France | 16856325.2 | 2016-10-14 | EP3362356 | 2023-06-14 | Granted/Issued | Flirtey Holdings, Inc. |
| EP1.1 | Parachute Deployment System for an Unmanned Aerial Vehicle | United Kingdom | 16856325.2 | 2016-10-14 | EP3362356 | 2023-06-14 | Granted/Issued | Flirtey Holdings, Inc. |
| EP1.2 | Parachute Control System for an Unmanned Aerial Vehicle | Germany | 16856334.4 | 2016-10-14 | EP3362360 | 2023-06-14 | Granted/Issued | Flirtey Holdings, Inc. |
| EP1.2 | Parachute Control System for an Unmanned Aerial Vehicle | France | 16856334.4 | 2016-10-14 | EP3362360 | 2023-06-14 | Granted/Issued | Flirtey Holdings, Inc. |
| EP1.2 | Parachute Control System for an Unmanned Aerial Vehicle | United Kingdom | 16856334.4 | 2016-10-14 | EP3362360 | 2023-06-14 | Granted/Issued | Flirtey Holdings, Inc. |
| DE3.1 | Delivery Mechanism | Germany | 18734685.3 | 2018-06-01 | EP3630607 | 2022-08-10 | Granted/Issued | Flirtey Holdings, Inc. |
| FR3.1 | Delivery Mechanism | France | 18734685.3 | 2018-06-01 | EP3630607 | 2022-08-10 | Granted/Issued | Flirtey Holdings, Inc. |
| GB3.1 | Delivery Mechanism | United Kingdom | 18734685.3 | 2018-06-01 | EP3630607 | 2022-08-10 | Granted/Issued | Flirtey Holdings, Inc. |
| US1.1(Continuation) | Continuation - Parachute Control System For An Unmanned Aerial Vehicle | United States of America | 16/694,705 | 2019-11-25 | 11,338,923 | 2022-05-24 | Granted/Issued | Flirtey Holdings, Inc. |
| DE8.3 | Centering Mechanism | Germany | 18800350.3 | 2018-09-13 | EP3681803 | 2022-05-11 | Granted/Issued | Flirtey Holdings, Inc. |
| FR8.3 | Centering Mechanism | France | 18800350.3 | 2018-09-13 | EP3681803 | 2022-05-11 | Granted/Issued | Flirtey Holdings, Inc. |
| GB8.3 | Centering Mechanism | United Kingdom | 18800350.3 | 2018-09-13 | EP3681803 | 2022-05-11 | Granted/Issued | Flirtey Holdings, Inc. |
| AU1.2 | Parachute Control System for an Unmanned Aerial Vehicle | Australia | 2016337362 | 2016-10-14 | 2016337362 | 2021-06-24 | Granted/Issued | Flirtey Holdings, Inc. |
| AU1.1 | Parachute Deployment System for an Unmanned Aerial Vehicle | Australia | 2016338690 | 2016-10-14 | 2016338690 | 2021-06-03 | Granted/Issued | Flirtey Holdings, Inc. |
| US1.2 | Parachute Control System for an Unmanned Aerial Vehicle | United States of America | 15/294,489 | 2016-10-14 | 10,703,494 | 2020-07-07 | Granted/Issued | Flirtey Holdings, Inc. |
| US3.0 | Package Delivery Mechanism in an Unmanned Aerial Vehicle | United States of America | 15/612,789 | 2017-06-02 | 10,618,655 | 2020-04-14 | Granted/Issued | Flirtey Holdings, Inc. |
| ZA1.2 | Parachute Control System for an Unmanned Aerial Vehicle | South Africa | 2018/01885 | 2016-10-14 | 2018/01885 | 2019-10-30 | Granted/Issued | Flirtey Holdings, Inc. |
| ZA1.1 | Parachute Deployment System for an Unmanned Aerial Vehicle | South Africa | 2018/01884 | 2016-10-14 | 2018/01884 | 2019-09-25 | Granted/Issued | Flirtey Holdings, Inc. |
| US1.1 | Parachute Deployment System for an Unmanned Aerial Vehicle | United States of America | 15/294,479 | 2016-10-14 | 10,112,721 | 2018-10-30 | Granted/Issued | Flirtey Holdings, Inc. |

REGISTERED TRADEMARKS AND PENDING TRADEMARK APPLICATIONS

| Mark Name | Image | Country | File Date | Serial No. | Reg. Date | Reg. No. | Ren. Due | Classes | Status |
|---|---|---|---|---|---|---|---|---|---|
| FLIRTEY | FLIRTEY | USA | 2018-06-08 | 87955021 | 2022-05-03 | 6719080 | 2028-05-03 | 012, 035, 039 | Live |
| ANYTHING ANYTIME ANYWHERE | ANYTHING ANYTIME ANYWHERE | USA | 2018-06-22 | 88010983 | 2020-08-18 | 6130863 | 2026-08-18 | 012 | Live |

DOMAIN NAMES

1. Flirtey.com
2. getskydrop.com

DOCUMENTATION

All lists, books, files, documents, correspondence and records and other information in the Seller's possession pertaining to the Purchased Assets, whether in electronic or hard copy.

Respectfully submitted:

**HARTMAN & HARTMAN**

*/s/ Jeffrey L. Hartman*
Jeffrey L. Hartman, Esq.,
Attorney for Trustee


**GREENBERG TRAURIG, LLP**

*/s/ Michelle Rowe Hallsten*
Michelle Rowe Hallsten, Esq.,
Attorney for Buyer

# # #

### **ALTERNATIVE METHOD Re: RULE 9021**

In accordance with Local Rule 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

_____  The court has waived the requirement set forth in LR 9021(b)(1).

__X__  No party appeared at the hearing or filed an objection to the paper.

_____  I have delivered a copy of the proposed order to all counsel who appeared at the hearing, any trustee appointed in this case and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond as indicated below.

***Trustee's Counsel:***

__X__  Prepared / **Approved** the form of this order

_____  Waived the right to review the order and/or

_____  Appeared at the hearing, waived the right to review the order

_____  Matter unopposed, did not appear at the hearing, waived the right to review the order

_____  Disapproved the form of this order

_____  Did not respond to the paper

***U.S. Trustee:***

_____  Approved the form of this order

_____  Disapproved the form of this order

_____  Waived the right to review the order and/or

_____  Did not respond to the paper

__X__  Did not appear at the hearing or object to the paper

_____  I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

I declare under penalty of perjury that the foregoing is true and correct.

Submitted by:
**HARTMAN & HARTMAN**

_/s/ Jeffrey L. Hartman_____
Jeffrey L. Hartman

3

# EXHIBIT 1

# EXHIBIT 1

Execution Version

ASSET PURCHASE AGREEMENT

BY AND BETWEEN

CHRISTINA W. LOVATO, CHAPTER 7 TRUSTEE,

AND

DRONE COMPANY LIQUIDATING TRUST

MARCH 31, 2025

TABLE OF CONTENTS

ARTICLE I. DEFINITIONS...................................................................................................... 1

ARTICLE II. PURCHASE AND SALE...................................................................................... 7

Section 2.1    Purchase and Sale of Purchased Assets ...................................... 7
Section 2.2    Excluded Assets................................................................................ 7
Section 2.3    Excluded Liabilities......................................................................... 7
Section 2.4    Consideration................................................................................... 7
Section 2.5    Closing.............................................................................................. 7
Section 2.6    Deliveries at Closing....................................................................... 7
Section 2.7    Allocation......................................................................................... 8
Section 2.8    Withholding ..................................................................................... 8

ARTICLE III. SELLER'S REPRESENTATIONS AND WARRANTIES ............................ 8

Section 3.1    Authorization, No Conflicts, Etc .................................................... 9
Section 3.2    Consents and Approvals ................................................................. 9
Section 3.3    Title to Purchased Assets ............................................................... 9
Section 3.4    Taxes................................................................................................. 9
Section 3.5    Intellectual Property...................................................................... 10
Section 3.6    Litigation......................................................................................... 10
Section 3.7    Brokers' Fees.................................................................................. 10
Section 3.8    No Outside Reliance ...................................................................... 10

ARTICLE IV. BUYER'S REPRESENTATIONS AND WARRANTIES.............................. 10

Section 4.1    Organization of Buyer ................................................................... 10
Section 4.2    Authorization of Transaction ........................................................ 10
Section 4.3    Noncontravention .......................................................................... 10
Section 4.4    Litigation......................................................................................... 11
Section 4.5    Brokers' Fees.................................................................................. 11
Section 4.6    No Outside Reliance ...................................................................... 11

ARTICLE V. DISCLAIMERS; WAIVERS, RELEASES ...................................................... 11

Section 5.1    Sale "As Is" "Where Is"; Release for Conditions..................... 11
Section 5.2    DISCLAIMER OF WARRANTIES FOR PURCHASED ASSETS...................... 14
Section 5.3    DISCLAIMER REGARDING INFORMATION ................................ 14
Section 5.4    DISCLAIMER AS TO TITLE TO ASSETS................................... 15
Section 5.5    SOLE REMEDY; WAIVER OF TITLE ......................................... 15
Section 5.6    CONSPICUOUSNESS................................................................... 15

ARTICLE VI. PRE-CLOSING COVENANTS ....................................................................... 15

Section 6.1    Bankruptcy Court Actions ............................................................ 15
Section 6.2    Commercially Reasonable Efforts ............................................... 15
Section 6.3    Filings with Governmental Entities; Permits and Licenses ..................................... 15
Section 6.4    Tax Matters ..................................................................................... 16

ARTICLE VII. OTHER COVENANTS.................................................................................... 16

Section 7.1    Cooperation..................................................................................... 16

i

Section 7.2        Further Assurances; Turnover ............................................................... 16

ARTICLE VIII. CONDITIONS TO CLOSING ........................................................................ 17

Section 8.1        Conditions to the Buyer's Obligations................................................ 17
Section 8.2        Conditions to the Seller's Obligations ............................................... 18
Section 8.3        No Frustration of Closing Conditions................................................. 18
Section 8.4        Waiver of Conditions.......................................................................... 18

ARTICLE IX. TERMINATION ............................................................................................... 18

Section 9.1        Termination of Agreement .................................................................. 18
Section 9.2        Procedure upon Termination ............................................................... 19
Section 9.3        Effect of Termination .......................................................................... 20

ARTICLE X. MISCELLANEOUS............................................................................................ 20

Section 10.1       Remedies ............................................................................................. 20
Section 10.2       Limitation of Liability ........................................................................ 20
Section 10.3       Expenses .............................................................................................. 20
Section 10.4       Entire Agreement................................................................................. 20
Section 10.5       Incorporation of Schedules, Exhibits, and Schedules......................... 20
Section 10.6       Amendments and Waivers.................................................................... 20
Section 10.7       Succession and Assignment................................................................. 20
Section 10.8       Notices ................................................................................................. 21
Section 10.9       Governing Law; Jurisdiction ............................................................... 21
Section 10.10      Consent to Service of Process.............................................................. 22
Section 10.11      WAIVERS OF JURY TRIAL .............................................................. 22
Section 10.12      Severability .......................................................................................... 22
Section 10.13      No Third-Party Beneficiaries............................................................... 22
Section 10.14      No Survival of Representations, Warranties, and Agreements............. 22
Section 10.15      Non-Recourse ...................................................................................... 22
Section 10.16      Construction......................................................................................... 23
Section 10.17      Computation of Time ........................................................................... 23
Section 10.18      Mutual Drafting ................................................................................... 23
Section 10.19      Headings; Table of Contents ............................................................... 23
Section 10.20      Counterparts; Facsimile and Email Signatures.................................... 23

ACTIVE 702698816v8

<u>EXHIBITS AND SCHEDULES</u>

<u>EXHIBITS</u>

Exhibit A.................................................Intellectual Property Assignment Agreement
Exhibit B .................................................Sale Order

<u>SCHEDULES</u>

Schedule 2.1 ...........................................Purchased Assets

ACTIVE 702698816v8

ASSET PURCHASE AGREEMENT

      This Asset Purchase Agreement (this "Agreement") is entered into as of March 31 , 2025 (the "Effective Date"), by and among Christina W. Lovato, not individually, but solely as the chapter 7 trustee (the "Seller") for the bankruptcy estate (the "Estate") of Flirtey Holdings, Inc., aka Skydrop, a Delaware corporation (the "Debtor"), and Drone Company Liquidating Trust, a Delaware statutory trust (together with its permitted successors, designees, and assigns, the "Buyer" and collectively with the Seller, the "Parties").

## RECITALS

      WHEREAS, on February 23, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") before the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court"), thereby initiating the chapter 7 case currently pending as *In re Flirtey Holdings, Inc., aka SkyDrop,* Case No. 24-50176-hlb (the "Chapter 7 Case");

      WHEREAS, the United States Trustee has appointed the Seller as the chapter 7 trustee for the Estate (the "Trustee");

      WHEREAS, the Seller desires to sell, transfer, and assign to the Buyer, and the Buyer desires to purchase, acquire, and assume, pursuant to section 363 of the Bankruptcy Code, the Purchased Assets upon the terms and subject to the conditions set forth herein;

      WHEREAS, the Seller sought the entry of the Sale Order by the Bankruptcy Court approving this Agreement and authorizing the Seller to consummate the Contemplated Transaction upon the terms and subject to the conditions set forth herein and in the Sale Order;

      WHEREAS, the Seller has determined, in the reasonable exercise of her business judgment, that it is advisable and in the best interest of the Estate and the beneficiaries thereof to consummate the Contemplated Transaction provided for herein pursuant to the Sale Order and has therefore approved this Agreement; and

      WHEREAS, on February 25, 2025, the Contemplated Transaction has been approved by the Bankruptcy Court and will be consummated pursuant to the Sale Order as entered by the Bankruptcy Court.

      NOW, THEREFORE, in consideration of the mutual promises herein made, and in consideration of the representations, warranties and covenants herein contained, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, the Parties agree as follows:

ARTICLE I.
DEFINITIONS

      "Affiliate" means, with respect to any Person, any other Person that, directly or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such Person, and the term "control" (including the terms "controlled by" and "under common control with") means, when used with reference to any Person, the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through ownership of voting securities, by Contract or otherwise.

"<u>Agreement</u>" has the meaning set forth in the preamble.

"<u>Bankruptcy Code</u>" has the meaning set forth in the Recitals.

"<u>Bankruptcy Court</u>" has the meaning set forth in the Recitals.

"<u>Business Day</u>" means any day other than a Saturday, a Sunday or a day on which banks located in Reno, Nevada shall be authorized or required by Law to close.

"<u>Buyer</u>" has the meaning set forth in the preamble.

"<u>Buyer Express Representations</u>" has the meaning set forth in <u>Section 3.8</u>.

"<u>Buyer Released Parties</u>" has the meaning set forth in <u>Section 5.1(g)</u>.

"<u>Buyer Releasing Parties</u>" has the meaning set forth in <u>Section 5.1(d)</u>.

"<u>Chapter 7 Case</u>" has the meaning set forth in the Recitals.

"<u>Claim</u>" means a "claim" as defined in section 101(5) of the Bankruptcy Code, whether arising before or after the Petition Date.

"<u>Closing</u>" means the closing of the Contemplated Transaction.

"<u>Closing Date</u>" means the date on which the Closing actually occurs.

"<u>Consent</u>" means any approval, consent, ratification, permission, clearance, designation, qualification, waiver, or authorization from a Governmental Entity, or an Order of the Bankruptcy Court that deems or renders any of the foregoing unnecessary.

"<u>Contemplated Transaction</u>" means the sale to the Buyer, and the purchase by the Buyer, of the Purchased Assets (subject to Permitted Liens) pursuant to, and in accordance with, this Agreement, the Related Agreements, and the Sale Order.

"<u>Contract</u>" means any written or oral agreement, contract, lease, sublease, indenture, mortgage, instrument, guaranty, loan or credit agreement, note, bond, customer order, purchase order, sales order, sales agent agreement, supply agreement, development agreement, joint venture agreement, promotion agreement, license agreement, contribution agreement, partnership agreement, or other arrangement, understanding, permission, or commitment that, in each case, is legally-binding.

"<u>Debtor</u>" has the meaning set forth in the preamble.

"<u>Effective Date</u>" has the meaning set forth in the preamble.

"<u>Estate</u>" has the meaning set forth in the preamble.

"<u>Excluded Assets</u>" has the meaning set forth in <u>Section 2.2</u>.

"<u>Excluded Liabilities</u>" has the meaning set forth in <u>Section 2.3</u>.

"<u>Financing Documents</u>" mean the Note Purchase Agreement and related documents.

"Fundamental Representations" means Section 3.1 (Authorization, No Conflicts, Etc.), Section 3.2 (Consents and Approvals), Section 3.3 (Title to Purchased Assets), and Section 3.7 (Brokers' Fees).

"GAAP" means United States generally accepted accounting principles as in effect from time to time, consistently applied.

"Governmental Approvals" means any authorization, consent, approval, license, ruling, permit, exemption, variance, order, judgment, decree, guidance, policy, declaration of or regulation by any Governmental Entity relating to the execution, delivery or performance of the Transaction Agreements.

"Governmental Entity" means any United States federal, state, or local or non-United States governmental, quasi-governmental or regulatory authority, agency, commission, court, body, or other governmental entity.

"Intellectual Property" means any and all rights, title and interest in or relating to intellectual property of any type, which may exist or be created under the Laws of any jurisdiction throughout the world, including all: (a) patents and patent applications, together with all reissues, continuations, continuations-in-part, divisionals, extensions and reexaminations in connection therewith; (b) service marks, brand names, Internet domain names, social media accounts or "handles," logos, symbols, trade dress, assumed names, fictitious names, trade names and other indicia of origin, all applications and registrations for all of the foregoing, and all goodwill associated therewith and symbolized thereby, along with all applications, registrations and renewals in connection therewith, and all goodwill associated with any of the foregoing; (c) rights associated with works of authorship, including exclusive exploitation rights, mask work rights, copyrights, database and design rights, whether or not registered or published, all registrations and recordations thereof and applications in connection therewith, along with all extensions and renewals thereof; (d) rights in electronic data processing systems, information management systems, recordkeeping systems, communications and telecommunications systems, networking systems, account management systems, Internet websites and related content, inventory management systems and other such applications, software, hardware, equipment and services (including any firmware, applications and software installed on such hardware and equipment, and all associated databases, and related documentation); (e) trade secrets and proprietary or confidential information relating to the Purchased Assets; and (f) any other intellectual property rights held by the Seller related to the Purchased Assets.

"Intellectual Property Assignment Agreement" means the Intellectual Property Assignment Agreement attached hereto as Exhibit A.

"IRC" means the United States Internal Revenue Code of 1986, as amended.

"Law" means any federal, state, provincial, local, municipal, foreign, or international, multinational, or other law, statute, legislation, constitution, principle of common law, resolution, ordinance, code, edict, decree, proclamation, treaty, convention, rule, regulation, ruling, directive, pronouncement, determination, decision, opinion, or requirement issued, enacted, adopted, promulgated, implemented, or otherwise put into effect by or under the authority of any Governmental Entity, or court of competent jurisdiction, or other legal requirement or rule of law, including applicable building, zoning, subdivision, health, and safety and other land use Laws.

"Liability" means, as to any Person, any debt, Claim, liability (including any liability that results from, relates to or arises out of tort or any other product liability claim), assessment, cost, expense, loss, expenditure, tax, charge, fee, penalty, fine, contribution, or premium of any kind or nature whatsoever, whether known or unknown, asserted or unasserted, absolute or contingent, direct or indirect, accrued or

ACTIVE 702698816v8

unaccrued, liquidated or unliquidated, or due or to become due, and regardless of when sustained, incurred, or asserted or when the relevant events occurred or circumstances existed.

"Lien" means any lien (as that term is defined in section 101(37) of the Bankruptcy Code), encumbrance, right, demand, charge, hypothecation, statutory or deemed trust, mortgage, deed of trust, right to purchase, option, right of first of refusal, pledge, security interest or similar interest, title defect, hypothecation, easement, license, right of way, servitude, encroachment, judgment, conditional sale or other title retention agreements and other similar impositions, imperfection or defect of title or restriction on transfer or use (whether known or unknown, secured or unsecured or in the nature of setoff or recoupment, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or nonmaterial, disputed or undisputed, whether arising prior to or subsequent to the commencement of the Chapter 7 Case, and whether imposed by agreement, understanding, Law, equity, or otherwise, including claims otherwise arising under doctrines of successor liability, alter ego, or veil piercing).

"Litigation" means any action, cause of action, suit, claim, investigation, mediation, arbitration, audit, grievance, demand, hearing, proceeding or investigation, whether civil, criminal, administrative or arbitral, whether at law or in equity and whether before any Governmental Entity, arbitrator, or mediator.

"Material Adverse Effect" means any change, event, effect, development, condition, circumstance or occurrence (when taken together with all other changes, events, effects, developments, conditions, circumstances, or occurrences) since the date of this Agreement, that (a) has had, or would reasonably be expected to have, a material adverse effect on the Purchased Assets (taken as a whole), (b) would reasonably be expected to prevent or materially delay beyond the Outside Date or materially impair the Seller's ability to consummate the transactions contemplated by this Agreement or (c) has had, or would be reasonably expected to have, a material adverse effect on the validity or enforceability of this Agreement and the Related Agreements or the rights and remedies of the Seller under this Agreement and the Related Agreements; *provided, however,* that no change, event, effect, development, condition, circumstance or occurrence related to any of the following shall be deemed to constitute, and none of the following shall be taken into account in determining whether there has been, a Material Adverse Effect: (i) the filing, announcement, pendency, or administration of the Chapter 7 Case, including (1) any Order of the Bankruptcy Court that is not in violation of this Agreement or the Sale Order, (2) any action or omission of Seller taken or not taken in order to comply with, avoid violation of, or resolve issues concerning any Order or objections filed with the Bankruptcy Court that is not in violation of this Agreement or the Sale Order, (3) the sale process for the Purchased Assets, or (4) anything directly or indirectly related thereto; (ii) acts of war, armed hostilities, sabotage, or terrorism, or any escalation or worsening of any such acts of war, armed hostilities, sabotage, or terrorism threatened or underway as of the date of this Agreement; (iii) changes in conditions in the U.S., foreign or global economy or capital or financial markets generally, including changes in interest or exchange rates; (iv) resulting from any act of God or other force majeure event (including natural disasters, or any epidemic, pandemic or wide-spread disease outbreak); (v) changes in Law or in GAAP or interpretations thereof; (vi) any failure, in and of itself, to meet any projections or forecasts for any period (provided that this subclause (vi) shall not prevent a determination that any cause underlying such failure to meet projections or forecasts has had, or would reasonably be expected to have, a Material Adverse Effect); (vii) any actions or omissions required by this Agreement and the Related Agreements; (viii) any actions taken by or at the request of the Buyer or any of its Affiliates; or (ix) the negotiation, announcement, or pendency of this Agreement or the consummation of the Contemplated Transaction or the identity, nature, or ownership of the Buyer or its Affiliates.

"Note Obligations" means any and all obligations owed to the Noteholders by the Estate, Debtor or the Trustee pursuant to the Notes and otherwise the Financing Documents.

ACTIVE 702698816v8

"<u>Note Purchase Agreement</u>" means the Note Purchase Agreement, dated October ___, 2022, by and between the Debtor and the Noteholders, as amended from time to time.

"<u>Noteholders</u>" means the holders of the Notes.

"<u>Notes</u>" means the Secured Convertible Promissory Notes issued pursuant to the Note Purchase Agreement.

"<u>Order</u>" means any order, judgment, decree, ruling, decision, opinion, injunction, assessment, attachment, undertaking, award, charge, writ, executive order, judicial order, administrative order, or any other order of any Governmental Entity.

"<u>Organizational Documents</u>" means, with respect to any entity, the certificate of incorporation, articles of incorporation, certificate of formation, articles of organization, by-laws, partnership agreement, limited liability company agreement, formation agreement, or other similar organizational or organic documents of such entity (in each case, as amended through the date of this Agreement).

"<u>Outside Date</u>" means April 15, 2025, which date may be extended up to fifteen (15) days at the option of the Buyer or Seller with the consent of the other party, which shall not be unreasonably withheld, conditioned or delayed.

"<u>Parties</u>" has the meaning set forth in the preamble.

"<u>Permitted Liens</u>" means Liens for Taxes which are not due and payable as of the Closing Date.

"<u>Person</u>" means an individual, a partnership, a corporation, a limited liability company, an association, a joint stock company, a trust, a joint venture, an unincorporated organization, or any other entity, including any Governmental Entity or any group or syndicate of any of the foregoing.

"<u>Petition Date</u>" has the meaning set forth in the Recitals.

"<u>Purchase Price</u>" has the meaning set forth in <u>Section 2.4</u>.

"<u>Purchased Assets</u>" has the meaning set forth in <u>Section 2.1</u>; *provided, however*, that, notwithstanding the foregoing or anything contained in this Agreement to the contrary, the Purchased Assets shall not include any Excluded Assets.

"<u>Records</u>" means the books and records related to the Purchased Assets wherever situated and whether in hard copy, electronic format, or in any other medium.

"<u>Registered</u>" means issued by, registered with, renewed by or the subject of a pending application before any Governmental Entity or domain name registrar.

"<u>Related Agreements</u>" means the Intellectual Property Assignment Agreement, any other instruments of transfer and conveyance required or reasonably necessary to convey valid title of the Purchased Assets to the Buyer pursuant to this Agreement and the Sale Order and any other agreement executed in connection with the Closing.

"<u>Representative</u>" means a Person's officers, directors, managers, employees, advisors, representatives (including its legal counsel, accountants, and other such professionals), and any other agents thereof.

"Sale Order" means an order of the Bankruptcy Court entered in the Chapter 7 Case, in form and substance as attached as Exhibit B hereto and with any revisions thereto being reasonably acceptable to the Seller and the Buyer, approving this Agreement and all of the terms and conditions hereof, and approving and authorizing the Seller to consummate the sale to the Buyer in accordance with this Agreement.

"Secured Parties" means the secured parties under the Note Purchase Agreement.

"Seller" has the meaning set forth in the preamble.

"Seller Express Representations" has the meaning set forth in Section 4.6.

"Seller's Knowledge" (or words of similar import) means the actual knowledge, after reasonable inquiry and investigation of the Trustee (it being acknowledged that the Trustee has no personal knowledge of the Debtor or its assets aside from knowledge gained during her appointment as Chapter 7 Trustee for the Estate).

"Seller Released Claims" has the meaning set forth in Section 5.1(g).

"Seller Released Parties" has the meaning set forth in Section 5.1(d).

"Seller Releasing Parties" has the meaning set forth in Section 5.1(g).

"Subsidiary" means, with respect to any Person, any corporation, limited liability company, partnership, association or other business entity of which (a) if a corporation, a majority of the total voting power of shares of stock entitled (without regard to the occurrence of any contingency) to vote in the election of directors, managers or trustees thereof (or other persons performing similar functions with respect to such corporation) is at the time owned or controlled, directly or indirectly, by that Person or one or more of the other Subsidiaries of that Person or a combination thereof, or (b) if a limited liability company, partnership, association or other business entity (other than a corporation), a majority of partnership or other similar ownership interest thereof is at the time owned or controlled, directly or indirectly, by that Person or one or more Subsidiaries of that Person or a combination thereof and for this purpose, a Person or Persons owns a majority ownership interest in such a business entity (other than a corporation) if such Person or Persons shall be allocated a majority of such business entity's gains or losses or shall be or control any managing director, managing member, or general partner of such business entity (other than a corporation). The term "Subsidiary" shall include all Subsidiaries of such Subsidiary.

"Tax" or "Taxes" means (a) any United States federal, state or local or non-United States income, gross receipts, license, payroll, employment, excise, severance, stamp, occupation, premium, windfall profits, environmental (including taxes under Section 59A of the IRC), customs duties, capital stock, franchise, profits, withholding, social security (or similar), unemployment, real property, personal property, ad valorem, escheat, unclaimed property, sales, use, liquor, cigarette, transfer, value added, alternative or add-on minimum, estimated or other tax of any kind whatsoever (however denominated), whether computed on a separate or consolidated, unitary or combined basis or in any other manner, including any interest, penalty or addition thereto, whether or not disputed, and (b) any Liability for the payment of any amounts of the type described in clause (a) of this definition as a result of being a member of an affiliated, consolidated, combined or unitary group for any period, as a result of any tax sharing or tax allocation agreement, arrangement or understanding, or as a result of being liable for another Person's taxes as a transferee or successor, by contract or otherwise.

"Tax Return" means any return, declaration, report, claim for refund or information return or statement relating to Taxes, including any schedule or attachment thereto, and including any amendment thereof.

"Transaction Agreements" has the meaning ascribed in the Recitals.

"Transfer Tax" means any stamp, documentary, registration, transfer, real estate transfer, use, sales, added-value, or similar Tax imposed under any applicable Law in connection with the Contemplated Transaction.

"Treasury Regulations" means regulations promulgated by the United States Department of Treasury under the IRC.

ARTICLE II.
PURCHASE AND SALE

Section 2.1    Purchase and Sale of Purchased Assets. Subject to the terms and conditions set forth in this Agreement, at the Closing, the Buyer shall purchase, acquire and accept, and the Seller shall cause the Estate and the Debtor to sell, transfer, assign, convey and deliver to the Buyer, all of the Estate or the Debtor's right, title and interest in and to the assets set forth in Schedule 2.1 attached hereto, whether direct or indirect, real, personal or mixed, tangible or intangible, wherever situated, whether or not carried or reflected on the books and records of the Estate or the Debtor, free and clear of Claims, Liens and Liabilities, other than Permitted Liens (the "Purchased Assets").Excluded Assets. All assets, properties, and rights of the Debtor or the Estate other than the Purchased Assets shall be retained by the Estate and are not being sold to the Buyer hereunder (collectively, the "Excluded Assets").Excluded Liabilities. Notwithstanding anything to the contrary set forth herein, the Buyer shall not assume and shall be deemed not to have assumed, and the Debtor and the Estate shall be solely and exclusively liable with respect to all Liabilities thereof, whether existing on the Closing Date or arising thereafter (collectively, the "Excluded Liabilities").Consideration. Consideration for the sale and transfer of the Purchased Assets under this Agreement (the "Purchase Price") shall be composed of the following:cash in the amount of five thousand dollars ($5,000) for distribution to Estate creditors;

ii.    cash in the amount of nine thousand seven hundred twenty-four and 44/100 ($9,724.44) to pay the Trustee's counsel's fees and expenses; and

iii.    the outstanding secured Note Obligations.

Section 2.5    Closing. The Closing shall take place remotely by electronic exchange of electronic documents and signatures (or wet signatures, to the extent required) on the second (2nd) Business Day after the date on which all conditions to the obligations of the Seller and the Buyer to consummate the Contemplated Transaction set forth in ARTICLE VIII (other than conditions with respect to actions the Seller or the Buyer will take at the Closing itself, but subject to the satisfaction or waiver of those conditions) have been satisfied or waived by the party entitled to waive that condition, or at such other place, time or on such other date as shall be mutually agreed upon by the Seller and the Buyer beforehand. The Closing shall be deemed to have occurred for all purposes at 12:01 a.m. (prevailing Pacific Time) on the Closing Date.Deliveries at Closing.At the Closing, the Seller shall deliver to the Buyer the following documents and other items, duly executed by the Seller (as applicable):

i.    the Sale Order;

ii.    the Intellectual Property Assignment Agreement;

iii.    IRS Form W-9; and

iv.    all other previously undelivered certificates, agreements and other documents, instruments and writings reasonably requested by the Buyer available to the Seller to be delivered by the Seller at or prior to the Closing pursuant to this Agreement.

(b)    At the Closing, the Buyer shall deliver the following documents and other items, duly executed by the Buyer, as applicable:

i.    to the Seller, the cash portion of the Purchase Price;

ii.    to the Seller, the Intellectual Property Assignment Agreement, duly executed by the Buyer; and

iii.    all other previously undelivered certificates, agreements and other documents, instruments and writings reasonably requested by the Seller to be delivered by the Buyer at or prior to the Closing in connection with the Contemplated Transaction.

Section 2.7    Allocation. Within one hundred twenty (120) calendar days after the Closing Date, the Buyer shall in good faith prepare and deliver to the Seller an allocation of the Purchase Price among the applicable Purchased Assets in accordance with section 1060 of the IRC and the Treasury Regulations thereunder (and any similar provision of United States, state, local or non-United States Law, as appropriate). The Buyer and the Seller shall report, act and file Tax Returns (including Internal Revenue Service Form 8594) in all respects and for all purposes consistent with such allocation. Neither the Buyer nor the Seller shall take any position (whether in audits, Tax Returns or otherwise) which is inconsistent with such allocation; *provided* that nothing contained herein shall prevent the Buyer or the Seller from settling any proposed deficiency or adjustment by any Governmental Entity based upon or arising out of such allocation, and neither the Buyer nor the Seller shall be required to litigate before any court any proposed deficiency or adjustment by any Governmental Entity challenging the allocation.Withholding. The Buyer shall be entitled to deduct or withhold from any amounts payable or otherwise deliverable pursuant to this Agreement any withholding Taxes or other amounts that may be or are required to be deducted or withheld therefrom under the IRC or any applicable Law. In connection with this section, the Seller agrees to provide at Closing such certifications as reasonable required by the Buyer and in form reasonably approved by the Buyer, duly executed by the Seller, including an IRS Form W-9.

ARTICLE III.
SELLER'S REPRESENTATIONS AND WARRANTIES

For the avoidance of doubt, (A) except in the case of fraud by any Person, the Buyer agrees to accept the economic condition of the Purchased Assets on an "As Is-Where Is" basis subject to the terms of this Agreement and the Related Agreements, (B) each of the representations and warranties and the covenants and agreements (to the extent such covenant or agreement contemplates or requires performance to be completed by such Party prior to the Closing) of the Parties set forth in this Agreement or in any other document contemplated hereby, or in any certificate delivered hereunder or thereunder, will terminate effective immediately as of the Closing such that no claim for breach of any such representation, warranty, covenant or agreement, detrimental reliance or other right or remedy (whether in contract, in tort or at law or in equity) may be brought with respect thereto after the Closing (it being agreed that all such rights, remedies, recourse and entitlements are hereby expressly waived and released to the fullest extent permitted by Law effective immediately as of the Closing) in the absence of willful misconduct, intentional misconduct or fraud, and (C) in the absence of willful misconduct, intentional misconduct or fraud, in the event of a breach of any representation or warranty by the Seller, the Buyer's sole remedy with respect to

such breach is termination of this Agreement in accordance with <u>ARTICLE IX</u> of this Agreement. The Seller represents and warrants to the Buyer as follows:

Section 3.1     <u>Authorization, No Conflicts, Etc</u>. The Seller is the Chapter 7 Trustee of the Debtor and the Estate. To the Seller's Knowledge, the Debtor is an entity duly formed, validly existing and in good standing under the Laws of the State of Delaware, and as approved by Order of the Bankruptcy Court, the Estate has all requisite power and authority to own and operate its assets and to carry on its business as now being conducted. The Seller, subject to the entry and effectiveness of the Sale Order, has full power and authority to execute and deliver this Agreement, all Related Agreements to which she is a party and all other agreements, instruments, and documents contemplated hereby and thereby and to perform its obligations hereunder and thereunder. The execution, delivery and performance of this Agreement and all other Related Agreements to which the Seller is a party have been duly authorized by the Seller, subject to entry of the Sale Order, and no other action on the part of the Seller is necessary to authorize this Agreement or the Related Agreements to which she is a party or to consummate the Contemplated Transaction. Subject to the entry and effectiveness of the Sale Order, this Agreement has been duly and validly executed and delivered by the Seller and (assuming this Agreement constitutes a valid and legally binding obligation of the Buyer and upon the entry and effectiveness of the Sale Order) constitutes a valid and legally binding agreement of the Seller, enforceable against the Seller in accordance with its terms. To the extent each Related Agreement constitutes a valid and legally binding obligation of the Buyer party thereto, each Related Agreement to which the Seller is a party, when executed and delivered, constituted or will constitute the valid and legally binding obligations of the Seller, enforceable against the Seller in accordance with their respective terms and conditions. (i) To the Seller's Knowledge prior to the entry of the Sale Order and (ii) subject to the Sale Order after its entry by the Bankruptcy Court, neither the execution and delivery of this Agreement or any other agreement, instrument, or document contemplated hereby to be executed and delivered by the Seller, nor the performance of the obligations of the Seller hereunder or thereunder, will result in the (a) violation of any applicable Law, or (b) require any filing with or permit, consent or approval of, or the giving of any notice to, a Governmental Entity (including filings, consents or approvals required under any Permits and Licenses to which the Debtor is a named party).<u>Consents and Approvals</u>. To Seller's Knowledge, no consent, approval, or authorization of, or declaration, filing, or registration with, any Governmental Entity is required to be made or obtained by the Seller in connection with the execution and delivery of this Agreement or any other agreement, instrument, or document contemplated hereby to be executed and delivered by the Seller or the performance of the obligations of the Seller hereunder or thereunder, except for (i) consents, approvals, or authorizations of, or declarations or filings with, the Bankruptcy Court in connection with the entry and effectiveness of the Sale Order, (ii) the filing of such assignments or other conveyance documents as may be required to transfer the Estate's interest in the Purchased Assets, and (iii) the filing of such documents as may be necessary to reflect the release of any Liens as a matter of public record.<u>Title to Purchased Assets</u>. To Seller's Knowledge, the Estate has good, valid, legal, and indefeasible title to the Purchased Assets. At the Closing or such time as title is conveyed under this Agreement, the Seller will cause the Estate to convey, subject to the Sale Order having been entered and still being in effect and not subject to any stay pending appeal at the time of Closing, to the Buyer good, valid, legal, and indefeasible title to all of the Purchased Assets as provided in the Sale Order (subject to the rights of licensees or lessees, if any, under sections 365(h) of 365(n) of the Bankruptcy Code).<u>Taxes</u>. The Seller is not a "foreign person" as defined in section 1445 of the IRC. To the Seller's Knowledge, all Tax Returns required to be filed by the Seller or the Debtor with respect to the Purchased Assets have been timely filed with the appropriate Governmental Entity and all such Tax Returns are true, complete and correct in all material respects. To the Seller's Knowledge, all Taxes due and payable by the Seller or the Debtor with respect to the Purchased Assets have been timely paid. To the Seller's Knowledge, no audits, examination, investigation or other administrative or court proceedings are pending with regard to any Taxes or Tax Returns of the Seller or the Debtor with respect to the Purchased Assets, and the Seller has not received written notice of any such audits, examinations, investigations or other administrative or

9

court proceedings.Intellectual Property.To the Seller's Knowledge, Schedule 2.1 hereto sets forth a true and complete list of all Registered Intellectual Property that is owned by the Seller or the Debtor.

(b)    To the Seller's Knowledge, none of the use of the Intellectual Property included in the Purchased Assets, infringes upon or otherwise violates the Intellectual Property of any other Person. To the Seller's Knowledge, no third party is infringing any Intellectual Property owned by the Seller and included in the Purchased Assets, except as would not reasonably be expected to have a Material Adverse Effect.

Section 3.6    Litigation. To Seller's Knowledge, other than the Chapter 7 Case, there is no Litigation pending or threatened against the Seller, the Debtor or the Estate concerning the Purchased Assets. To Seller's Knowledge, there are no outstanding Orders and no unsatisfied judgments, penalties or awards against, relating to or affecting the Purchased Assets. Brokers' Fees. Neither the Seller nor the Estate has entered into any Contract to pay any fees or commissions to any broker, finder or agent with respect to the Contemplated Transaction and there is no investment banker, broker, finder or other such intermediary that is entitled to a fee or commission in connection with Contemplated Transactions.No Outside Reliance. Notwithstanding anything contained in this ARTICLE III or any other provision of this Agreement to the contrary, the Seller acknowledges and agrees that the representations and warranties made by the Buyer to the Seller in ARTICLE IV (as qualified by ARTICLE V below and in accordance with the express terms and conditions (including limitations and exclusions) of this Agreement) (the "Buyer Express Representations") are the sole and exclusive representations, warranties, and statements of any kind made by the Buyer to the Seller in connection with the Contemplated Transaction. BUYER'S REPRESENTATIONS AND WARRANTIES

The Buyer represents and warrants to the Seller as follows:

Section 4.1    Organization of Buyer. The Buyer is a Delaware statutory trust, duly formed and validly existing under the Laws of the State of Delaware, and has all requisite power and authority to own and operate its assets and to carry on its business as now being conducted.Authorization of Transaction.The Buyer has full power, capacity and authority to execute and deliver this Agreement and all Related Agreements to which it is a party and to perform its obligations hereunder and thereunder.

(b)    The execution, delivery and performance of this Agreement and all other Related Agreements to which the Buyer is a party have been duly authorized by the Buyer, and no other action on the part of the Buyer is necessary to authorize this Agreement or the Related Agreements to which it is a party or to consummate the Contemplated Transaction.

(c)    This Agreement has been duly and validly executed and delivered by the Buyer. This Agreement constitutes a valid and legally binding obligation of the Buyer, enforceable against the Buyer in accordance with its terms and conditions, subject to applicable bankruptcy, insolvency, moratorium or other similar Laws relating to creditors' rights and general principles of equity. To the extent each Related Agreement constitutes a valid and legally-binding obligation of the Seller party thereto, each Related Agreement to which the Buyer is a party, when executed and delivered, constituted or will constitute the valid and legally-binding obligations of the Buyer, enforceable against the Buyer in accordance with their respective terms and conditions, subject to applicable bankruptcy, insolvency, moratorium or other similar Laws relating to creditors' rights and general principles of equity.

Section 4.3    Noncontravention. Neither the execution and delivery of this Agreement, nor the consummation of the Contemplated Transaction will (i) conflict with or result in a breach of the Organizational Documents of the Buyer, (ii) subject Buyer to any consents required to be obtained from

10

any Governmental Entity, violate any Law to which the Buyer is, or its assets or properties are subject, or (iii) conflict with, result in a breach of, constitute a default under, result in the acceleration of, create in any party the right to accelerate, terminate, modify or cancel any Contract to which the Buyer is a party or by which it is bound, except, in the case of either <u>clause (ii)</u> or <u>(iii)</u>, for such conflicts, breaches, defaults, accelerations or rights as would not, individually or in the aggregate, reasonably be expected to prevent, materially delay or materially impair the ability of the Buyer to consummate the Contemplated Transaction or the Related Agreements. The Buyer is not required to give any notice to, or make any filing with, or obtain any authorization, consent or approval of any Governmental Entity in order for the Parties to consummate the Contemplated Transaction or any of the Related Agreements.<u>Litigation</u>. There are no Actions pending or, to the Buyer's knowledge, threatened in writing against or affecting the Buyer that will adversely affect the Buyer's performance under this Agreement or the consummation of the Contemplated Transaction.<u>Brokers' Fees</u>. Neither the Buyer nor any of its Affiliates has entered into any Contract to pay any fees or commissions to any broker, finder, or agent with respect to the Contemplated Transaction for which the Seller could become liable or obligated to pay.<u>No Outside Reliance</u>. Notwithstanding anything contained in this <u>Article IV</u> or any other provision of this Agreement to the contrary, the Buyer acknowledges and agrees that the representations and warranties made by the Seller to the Buyer in <u>ARTICLE III</u> (as qualified by <u>ARTICLE V</u> below and in accordance with the express terms and conditions (including limitations and exclusions) of this Agreement) (the "<u>Seller Express Representations</u>") are the sole and exclusive representations, warranties, and statements of any kind made by the Seller to the Buyer in connection with the Contemplated Transaction. <u>DISCLAIMERS; WAIVERS, RELEASES</u>

Section 5.1    <u>Sale "As Is" "Where Is"; Release for Conditions</u>.NOTWITHSTANDING ANYTHING IN THIS AGREEMENT TO THE CONTRARY, THE BUYER AND THE SELLER ACKNOWLEDGE AND AGREE THAT THE SELLER HAS ACQUIRED THE ESTATE'S INTEREST IN THE PURCHASED ASSETS IN THE CAPACITY OF BANKRUPTCY TRUSTEE. THE SELLER HEREBY SPECIFICALLY DISCLAIMS ANY WARRANTY, GUARANTY OR REPRESENTATION OTHER THAN SELLER EXPRESS REPRESENTATIONS.

(b)    THE BUYER REPRESENTS THAT IT HAS COMPLETED ITS DILIGENCE, INSPECTION, INVESTIGATION, OR REVIEW, AND HAS BEEN GIVEN ACCESS TO INFORMATION AND THE OPPORTUNITY TO CONDUCT DILIGENCE, INSPECTION, INVESTIGATION, AND REVIEW. THE BUYER HAS RELIED UPON ONLY (I) ITS OWN INDEPENDENT DILIGENCE, REVIEW, INVESTIGATION, OR INSPECTION IN EXECUTING THIS AGREEMENT AND CONSUMMATING THE CONTEMPLATED TRANSACTION, (II) INFORMATION PROVIDED BY THE SELLER AND (III) THE SELLER EXPRESS REPRESENTATIONS.

(c)    EXCEPT IN THE CASE OF INTENTIONAL MISCONDUCT, WILLFUL MISCONDUCT OR FRAUD BY ANY PERSON, THE BUYER AGREES TO ACCEPT THE ECONOMIC CONDITION OF THE PURCHASED ASSETS ON AN "<u>AS IS-WHERE IS</u>" BASIS SUBJECT TO THE TERMS OF THIS AGREEMENT AND THE RELATED AGREEMENTS.

(d)    EFFECTIVE AS OF THE CLOSING, EXCEPT IN THE CASE OF WILLFUL MISCONDUCT, INTENTIONAL MISCONDUCT OR FRAUD BY ANY PERSON, (A) THE BUYER ON ITS OWN BEHALF AND ON BEHALF OF ANY PERSON CLAIMING BY, THROUGH, OR ON BEHALF OF THE BUYER, (B) THE BUYER'S BENEFICIARIES AND (C) ALL OF THE SUCCESSORS OR ASSIGNS OF ANY OF THE FOREGOING IN CLAUSES (A) – (C) ("<u>BUYER RELEASING PARTIES</u>") RELEASES (A) THE SELLER, (B) THE ESTATE, AND (C) ALL OF THE SUCCESSORS OR ASSIGNS OF ANY OF THE

11

FOREGOING IN CLAUSES (A) – (C) (COLLECTIVELY, "SELLER RELEASED PARTIES") FROM ANY LIABILITY WITH RESPECT TO THE PURCHASED ASSETS, OTHER THAN AS MAY BE EXPRESSLY PROVIDED FOR UNDER THIS AGREEMENT, WHETHER OR NOT CAUSED BY OR ATTRIBUTABLE TO THE NEGLIGENCE, FAULT, OR STRICT LIABILITY OF THE SELLER, ESTATE OR DEBTOR AND WHETHER OR NOT ARISING DURING THE PERIOD OF, OR FROM, OR IN CONNECTION WITH THE OWNERSHIP OF THE PURCHASED ASSETS OR USE OF THE PURCHASED ASSETS BEFORE OR AT THE CLOSING DATE (AND NOT, FOR THE AVOIDANCE OF DOUBT, WITH RESPECT TO ANY LIABILITY FOLLOWING THE CLOSING). WITHOUT LIMITING THE ABOVE, EXCEPT IN THE CASE OF WILLFUL MISCONDUCT, INTENTIONAL MISCONDUCT OR FRAUD BY ANY PERSON, THE BUYER, FOR AND ON BEHALF OF ITSELF AND THE OTHER BUYER RELEASING PARTIES, WAIVES ANY RIGHT, EXCEPT TO THE EXTENT PROVIDED FOR IN THIS AGREEMENT, TO RECOVER FROM THE SELLER, ESTATE OR DEBTOR AND, EXCEPT TO THE EXTENT PROVIDED FOR IN THIS AGREEMENT, FOREVER RELEASES AND DISCHARGES THE SELLER, ESTATE AND DEBTOR FROM ANY AND ALL DAMAGES, CLAIMS, LOSSES, LIABILITIES, PENALTIES, FINES, LIENS, JUDGMENTS, COSTS AND EXPENSES WHATSOEVER, (INCLUDING ATTORNEYS' FEES AND COSTS), WHETHER DIRECT OR INDIRECT, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, CONTINGENT OR NON-CONTINGENT, LIQUIDATED OR UNLIQUIDATED, DISPUTED OR UNDISPUTED, THAT MAY ARISE ON ACCOUNT OF OR IN ANY WAY BE CONNECTED WITH THE CONDITION OF THE PURCHASED ASSETS OR ANY LAW OR REGULATION APPLICABLE THERETO, WHETHER OR NOT ARISING DURING THE PERIOD OF, OR FROM, OR IN CONNECTION WITH, OWNERSHIP OF THE PURCHASED ASSETS OR USE OF THE PURCHASED ASSETS AT OR PRIOR TO THE CLOSING, AND WHETHER OR NOT ATTRIBUTABLE TO THE STRICT LIABILITY OF THE SELLER, ESTATE OR DEBTOR OR TO THE SOLE, JOINT OR CONCURRENT, ACTIVE OR PASSIVE, NEGLIGENCE OF THE SELLER, ESTATE OR DEBTOR, EVEN IF CAUSED BY THE NEGLIGENCE OF THE SELLER, ESTATE OR DEBTOR PRIOR TO CLOSING. NOTWITHSTANDING THE FOREGOING, NOTHING CONTAINED IN THIS SECTION 5.1(D) SHALL (A) CONSTITUTE A RELEASE OR WAIVER OF ANY RIGHTS OF THE BUYER RELEASING PARTIES OR (B) RELEASE OR RELIEVE ANY OBLIGATIONS OF ANY PERSON, IN EITHER CASE OF CLAUSES (A) AND (B), THAT ARE (I) EXPRESSLY SET FORTH IN THIS AGREEMENT, ANY RELATED AGREEMENT OR ANY OTHER AGREEMENT, CERTIFICATE OR INSTRUMENT DELIVERED PURSUANT HERETO OR THERETO OR OTHERWISE IN CONNECTION HEREWITH OR THEREWITH, (II) OBLIGATIONS PURSUANT TO A CONFIDENTIALITY AGREEMENT OR ANY SIMILAR CONTRACT, (III) ANY CLAIM THAT CANNOT BE WAIVED BY LAW OR (IV) ARISING OUT OF WILLFUL MISCONDUCT, INTENTIONAL MISCONDUCT OR FRAUD BY ANY PERSON. NOTWITHSTANDING THE FOREGOING, NOTHING CONTAINED IN THIS SECTION 5.1(D) SHALL CONSTITUTE A RELEASE OR WAIVER OF ANY RIGHTS OF THE NOTEHOLDERS REFERENCED IN PARAGRAPH 8 OF THE SALE ORDER. THE FOREGOING RELEASE AND WAIVER OF CLAIMS (I) WAS MADE WITH THE ADVICE OF COUNSEL AND FULLY, FINALLY AND FOREVER SETTLES AND RELEASES SUCH CLAIMS AND (II) SHALL BE AND REMAIN IN EFFECT NOTWITHSTANDING THE DISCOVERY OF ANY ADDITIONAL CLAIMS OR FACTS RELATING TO ANY OF SUCH CLAIMS.

(e)    THE BUYER HEREBY SPECIFICALLY DISCLAIMS ANY WARRANTY, GUARANTY OR REPRESENTATION OTHER THAN THE BUYER EXPRESS REPRESENTATIONS.

(f)    THE SELLER REPRESENTS THAT SHE HAS COMPLETED HER DILIGENCE, INSPECTION, INVESTIGATION, OR REVIEW, AND HAS BEEN GIVEN ACCESS TO INFORMATION AND THE OPPORTUNITY TO CONDUCT DILIGENCE, INSPECTION, INVESTIGATION, AND REVIEW. THE SELLER HAS RELIED UPON ONLY (I) HER OWN INDEPENDENT DILIGENCE, REVIEW, INVESTIGATION, OR INSPECTION IN EXECUTING THIS AGREEMENT AND CONSUMMATING THE CONTEMPLATED TRANSACTION AND (II) THE BUYER EXPRESS REPRESENTATIONS.

(g)    EFFECTIVE AS OF THE CLOSING, THE SELLER, ON HER OWN BEHALF AND ON BEHALF OF THE ESTATE AND ANY PERSON CLAIMING BY, THROUGH, OR ON BEHALF OF THE SELLER OR THE ESTATE, AND ALL SUCCESSORS OR ASSIGNS OF ANY OF THE FOREGOING (COLLECTIVELY, "SELLER RELEASING PARTIES"), RELEASES (A) THE BUYER, (B) ITS AFFILIATES, (C) ALL DIRECT AND INDIRECT EQUITY HOLDERS, BENEFICIARIES, DIRECTORS, MANAGERS, OFFICERS, EMPLOYEES, ADVISORS, COUNSEL, AGENTS AND REPRESENTATIVES OF THE BUYER AND ITS AFFILIATES OR ANY OF THEIR AFFILIATES AND (D) ALL OF THE SUCCESSORS OR ASSIGNS OF ANY OF THE FOREGOING IN CLAUSES (A) – (D) (COLLECTIVELY, "BUYER RELEASED PARTIES") FROM, AND HEREBY VOLUNTARILY, UNCONDITIONALLY AND IRREVOCABLY WAIVES, ANY AND ALL DAMAGES, CLAIMS, LOSSES, LIABILITIES, PENALTIES, FINES, LIENS, JUDGMENTS, COSTS AND EXPENSES WHATSOEVER, (INCLUDING ATTORNEYS' FEES AND COSTS), WHETHER DIRECT OR INDIRECT, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, CONTINGENT OR NON-CONTINGENT, LIQUIDATED OR UNLIQUIDATED, DISPUTED OR UNDISPUTED, THAT ANY SELLER RELEASING PARTY EVER HAD, NOW HAS OR EVER MAY HAVE AGAINST ANY BUYER RELEASED PARTY FOR OR BY REASON OF ANY MATTER, CIRCUMSTANCE, EVENT, ACTION, INACTION, OMISSION, ERROR, NEGLIGENCE, BREACH OF CONTRACT, TORT, VIOLATION OF LAW, CAUSE OR THING WHATSOEVER ARISING PRIOR TO THE CLOSING CONCERNING THE SALE PROCESS OR THIS AGREEMENT (THE "SELLER RELEASED CLAIMS"). THE SELLER, ON BEHALF OF HERSELF AND EACH OF THE OTHER SELLER RELEASING PARTIES, COVENANTS THAT SELLER WILL NOT (AND THAT THE SELLER WILL CAUSE ALL OTHER PERSONS WHO MAY SEEK TO CLAIM AS, BY, THROUGH OR IN RELATION TO ANY OF THE SELLER RELEASING PARTIES OR ANY OF THE MATTERS RELEASED BY OR ON BEHALF OF THE SELLER RELEASING PARTIES UNDER THIS SECTION 5.1(G) NOT TO) SUE, OR BRING OR OTHERWISE PURSUE ANY CLAIM AGAINST, ANY OF THE BUYER RELEASED PARTIES ON THE BASIS OF OR IN ANY WAY RELATING TO ANY OF THE SELLER RELEASED CLAIMS (REGARDLESS OF WHETHER THE RELEASE OF ANY SUCH SELLER RELEASED CLAIM IS ENFORCEABLE UNDER, OR PROHIBITED BY, APPLICABLE LAW OR OTHERWISE). NOTWITHSTANDING THE FOREGOING, NOTHING CONTAINED IN THIS SECTION 5.1(G) SHALL (A) CONSTITUTE A RELEASE OR WAIVER OF ANY RIGHTS OF ANY SELLER RELEASING PARTY OR (B) RELEASE OR RELIEVE ANY OBLIGATIONS OF ANY PERSON, IN EITHER CASE OF CLAUSES (A) AND (B), THAT ARE (I) EXPRESSLY SET FORTH IN THIS AGREEMENT, ANY RELATED AGREEMENT OR ANY OTHER AGREEMENT, CERTIFICATE OR INSTRUMENT DELIVERED PURSUANT HERETO OR THERETO OR OTHERWISE IN CONNECTION HEREWITH OR THEREWITH, (II) OBLIGATIONS PURSUANT TO A CONFIDENTIALITY AGREEMENT OR ANY SIMILAR CONTRACT OR (III) ANY CLAIM THAT CANNOT BE WAIVED BY LAW. THE FOREGOING RELEASE AND WAIVER OF SELLER RELEASED CLAIMS (I) WAS MADE WITH THE ADVICE OF COUNSEL AND FULLY, FINALLY AND FOREVER SETTLES AND RELEASES THE SELLER RELEASED CLAIMS AND (II)

13

SHALL BE AND REMAIN IN EFFECT NOTWITHSTANDING THE DISCOVERY OF ANY ADDITIONAL CLAIMS OR FACTS RELATING TO ANY OF THE SELLER RELEASED CLAIMS.

Section 5.2     DISCLAIMER OF WARRANTIES FOR PURCHASED ASSETS. EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES CONTAINED IN THIS AGREEMENT AND THE RELATED AGREEMENTS (IT BEING UNDERSTOOD THAT THE BUYER HAS RELIED UPON SUCH REPRESENTATIONS AND WARRANTIES) AND WILLFUL MISCONDUCT, INTENTIONAL MISCONDUCT OR FRAUD BY ANY PERSON, THE BUYER ACKNOWLEDGES THAT NONE OF THE SELLER, ESTATE, OR ANY PERSON ACTING ON BEHALF OF THE SELLER OR THE ESTATE, HAS MADE, AND THE BUYER ACKNOWLEDGES THE EXPRESS DISCLAIMER AND NEGATION, OF ANY OTHER SUCH REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, RELATING TO THE PURCHASED ASSETS, INCLUDING (a) ANY IMPLIED OR EXPRESS WARRANTY OF MERCHANTABILITY, (b) ANY IMPLIED OR EXPRESS WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE, (c) ANY IMPLIED OR EXPRESS WARRANTY OF CONFORMITY TO MODELS OR SAMPLES OF MATERIALS, (d) ANY RIGHTS OF THE BUYER UNDER APPROPRIATE STATUTES TO CLAIM DIMINUTION OF CONSIDERATION OR RETURN OF THE PURCHASE PRICE, (e) ANY IMPLIED OR EXPRESS WARRANTY OF FREEDOM FROM PATENT OR TRADEMARK INFRINGEMENT, (f) ANY IMPLIED OR EXPRESS WARRANTY OF FREEDOM FROM REDHIBITORY VICES OR DEFECTS OR OTHER VICES OR DEFECTS, WHETHER KNOWN OR UNKNOWN, AND (g) ANY AND ALL IMPLIED WARRANTIES EXISTING UNDER APPLICABLE LAW NOW OR HEREAFTER IN EFFECT.DISCLAIMER REGARDING INFORMATION. IT IS EXPRESSLY NEGATED AND DISCLAIMED, AND THE BUYER HEREBY WAIVES, AND ACKNOWLEDGES THAT, EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT AND IN THE RELATED AGREEMENTS (IT BEING UNDERSTOOD THAT THE BUYER HAS RELIED UPON THE SELLER EXPRESS REPRESENTATIONS) AND FOR WILLFUL MISCONDUCT, INTENTIONAL MISCONDUCT OR FRAUD BY ANY PERSON, NONE OF THE SELLER, ESTATE, OR ANY PERSON ACTING ON BEHALF OF THE SELLER OR THE ESTATE HAS MADE, AND THE BUYER IS NOT RELYING UPON, ANY STATEMENT, REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, OR OTHER ASSURANCE RELATING TO (a) THE ACCURACY, COMPLETENESS OR MATERIALITY OF ANY INFORMATION, DATA OR OTHER MATERIALS (WRITTEN OR VERBAL) NOW, HERETOFORE, OR HEREAFTER FURNISHED TO THE BUYER BY OR ON BEHALF OF THE SELLER OR THE ESTATE, OR (b) THE HISTORICAL, CURRENT OR FUTURE BUSINESS, FINANCIAL CONDITION, RESULTS OF OPERATIONS, ASSETS, LIABILITIES, PROPERTIES, CONTRACTS, AND PROSPECTS OF THE SELLER, OR THE ESTATE.

(b)     IT IS EXPRESSLY NEGATED AND DISCLAIMED, AND THE SELLER, ON HER OWN BEHALF AND ON BEHALF OF THE SELLER RELEASING PARTIES, HEREBY WAIVES, AND ACKNOWLEDGES THAT, EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT AND IN THE RELATED AGREEMENTS (IT BEING UNDERSTOOD THAT THE SELLER HAS RELIED ONLY UPON THE BUYER EXPRESS REPRESENTATIONS), NONE OF THE BUYER OR ANY OF THE BUYER RELEASED PARTIES, HAS MADE, AND THE SELLER IS NOT RELYING UPON, ANY STATEMENT, REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, OR OTHER ASSURANCE RELATING TO (a) THE ACCURACY, COMPLETENESS OR MATERIALITY OF ANY INFORMATION, DATA OR OTHER MATERIALS (WRITTEN OR VERBAL) NOW, HERETOFORE, OR HEREAFTER FURNISHED TO THE SELLER OR ANY SELLER RELEASING PARTY BY OR ON BEHALF OF THE BUYER OR ANY THE BUYER RELEASING PARTY, OR (b) THE HISTORICAL, CURRENT OR FUTURE BUSINESS, FINANCIAL CONDITION, RESULTS

14

OF OPERATIONS, ASSETS, LIABILITIES, PROPERTIES, CONTRACTS, AND PROSPECTS OF THE BUYER OR ANY BUYER RELEASING PARTY.

Section 5.4  DISCLAIMER AS TO TITLE TO ASSETS. EXCEPT FOR THE SELLER EXPRESS REPRESENTATIONS, THE SELLER SHALL CONVEY THE SELLER'S AND THE ESTATE'S INTERESTS IN AND TO THE ASSETS TO THE BUYER WITHOUT ANY WARRANTY OF TITLE.SOLE REMEDY; WAIVER OF TITLE . THE BUYER HEREBY EXPRESSLY WAIVES ANY AND ALL RIGHTS OR REMEDIES AGAINST THE SELLER, ESTATE AND DEBTOR, INCLUDING ANY STATUTORY OR COMMON LAW RIGHT OF CONTRIBUTION WITH RESPECT TO ANY IMMATERIAL DEFECT, DEFICIENCY OR OTHER TITLE MATTER WITH RESPECT TO THE PURCHASED ASSETS (SUBJECT TO THE BUYER'S RIGHT TO RECEIVE TITLE TO THE PURCHASED ASSETS FREE AND CLEAR OF ALL LIENS (OTHER THAN PERMITTED LIENS) AND ALL LIABILITIES UPON THE TERMS AND SUBJECT TO THE CONDITIONS OF THIS AGREEMENT AND THE SALE ORDER. CONSPICUOUSNESS. EACH OF THE BUYER AND THE SELLER ACKNOWLEDGES THAT THE DISCLAIMERS, WAIVERS AND RELEASES CONTAINED IN THIS ARTICLE V AND ELSEWHERE IN THIS AGREEMENT ARE CONSPICUOUS. PRE-CLOSING COVENANTS

The Parties agree as follows with respect to the period between the execution of this Agreement and the Closing (except as otherwise expressly stated to apply to a different period):

Section 6.1  Bankruptcy Court Actions. Each of the Buyer and the Seller will promptly take such actions as are reasonably requested by the other Party to assist in obtaining entry of the Sale Order. The Sale Order shall, among other things, (i) approve, pursuant to sections 105 and 363 of the Bankruptcy Code, (A) the execution, delivery and performance by the Seller of this Agreement and the other Related Agreements, (B) the sale of the Purchased Assets to the Buyer, and (C) the consummation of the Contemplated Transaction and the performance by the Seller of its obligations under this Agreement and the Related Agreements; (ii) authorize and empower the Seller to assume and assign to the Buyer the Assumed Contracts; and (iii) find that the Buyer is a "good faith" buyer within the meaning of section 363(m) of the Bankruptcy Code, not a successor to the Seller, and that this Agreement and the Contemplated Transaction are undertaken by the Buyer and the Seller at arm's length, without collusion, that the Buyer is entitled to the protections of section 363(m) of the Bankruptcy Code, and that the provisions of section 363(n) of the Bankruptcy Code are not applicable. The Buyer shall promptly take such actions as are reasonably requested by the Seller to assist in obtaining Bankruptcy Court approval of the Sale Order (with all aforementioned terms), including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for purposes, among others, of demonstrating that the Buyer is a "good faith" purchaser under section 363(m) of the Bankruptcy Code. In the event that the Sale Order is appealed or any Person seeks to stay the consummation of the Contemplated Transaction pending such an appeal, the Seller and the Buyer shall use reasonable efforts to defeat such motion for stay and defend such appeal, as applicable.

Section 6.2  Commercially Reasonable Efforts. The Buyer, on the one hand, and the Seller, on the other hand, will use their respective commercially reasonable efforts to take, or cause to be taken, all actions, and do, or cause to be done, and assist and cooperate with each other in doing, all things necessary to consummate, in the most expeditious manner practicable, the transactions contemplated hereby, including the satisfaction of the conditions set forth in ARTICLE VIII.

Section 6.3  Filings with Governmental Entities; Permits and Licenses.  Without limiting the generality or the effect of Section 6.2, the Buyer, on the one hand, and the Seller, on the other hand, will (i) cooperate with each other in connection with, and use their respective commercially reasonable efforts to provide information required for, any application or other filing to be made with any Governmental Entity in connection with the transactions contemplated by this Agreement, and (ii) cooperate with each

15

other in connection with, and use their respective commercially reasonable efforts to resolve, objections, if any, that are asserted by any Governmental Entity with respect to the transactions contemplated hereby.Tax Matters.The Seller and the Buyer shall prepare their respective Tax Returns and cooperate to finalize and timely file any Tax Returns required to be filed. The Buyer, on the one hand, and the Seller, on the other hand, will (i) provide each other with any assistance that may reasonably be requested by the other in connection with the preparation of any Tax Return, audit or other examination by any taxing authority or judicial or administrative proceedings relating to liability for Taxes, (ii) each retain and provide the other with any records or other information that may be relevant to that Tax Return, audit, examination or proceeding, and (iii) provide each other with any final determination of any such audit, examination or proceeding that affects any amount required to be shown on any Tax Return of the other for any period. Without limiting the generality of the foregoing, the Seller and the Estate will retain copies of all records or information that may be relevant to Tax Returns for all Tax periods or portions thereof ending before or including the Closing Date in accordance with United States Trustee Guidelines. In the event the Seller seeks to abandon or destroy any such records and information, the Seller shall provide written notice to the Buyer of the Seller's intent to abandon or destroy such records and information, and the Buyer shall have the reasonable opportunity to inspect such records and information. Following the Buyer's receipt of such written notice, the Buyer shall have thirty (30) days to elect by notice to the Seller to take or arrange custody of all or any portion of such records, and following such election, the Seller shall deliver such records pursuant to the Buyer's reasonable direction, at the Buyer's expense, and such records and information shall then be a Purchased Asset pursuant to this Agreement. In the event the Buyer elects not to take or arrange custody of any such records, the Seller may then abandon or destroy such records.

(b)    To the extent not exempted under section 1146 of the Bankruptcy Code pursuant to the terms of the Sale Order, the Seller shall pay all Transfer Taxes. To the extent not exempted under state Law pursuant to the terms of the Sale Order, the Seller shall pay all Taxes arising or imposed under any Tax-related bulk transfer Laws of any jurisdiction. The Seller shall use its commercially reasonable efforts to seek such exemptions in the Sale Order to the extent permitted by applicable Law.

(c)    All real property, personal property, *ad valorem* or other similar Taxes (not including income Taxes) levied with respect to the Purchased Assets for a taxable period which includes (but does not end on) the Closing Date shall be apportioned to the Seller based on the number of days included in such period through and including the Closing Date and apportioned to the Buyer based upon the number of days included in such period after the Closing Date.

ARTICLE VII.
OTHER COVENANTS

The Parties agree as follows with respect to the period from and after the Closing; *provided* that (i) the Seller shall not incur Liabilities associated with the obligations hereunder, but shall pay all related costs, including with respect to ordinary and necessary professional fees as are required for the Seller to comply with the obligations hereunder, and (ii) the Seller's obligations hereunder shall only continue until the Chapter 7 Case is closed or dismissed.

Section 7.1    Cooperation. Each of the Parties shall cooperate with each other and shall use their commercially reasonable efforts to cause their respective Representatives to cooperate with each other, to provide an orderly transition of the Purchased Assets from the Seller to the Buyer.Further Assurances; Turnover. In case at any time from and after the Closing any further action is necessary or reasonably required to carry out the purposes of this Agreement, subject to the terms and conditions of this Agreement and the terms and conditions of the Sale Order, each Party shall take such further action (including the execution and delivery to any other Party of such other reasonable instruments of sale, transfer, conveyance,

16

assignment, assumption and confirmation and providing materials and information) as another Party may reasonably request and as may be necessary to transfer, convey, and assign to the Buyer all of the Purchased Assets and to confirm the Seller's retention of the Excluded Assets and Excluded Liabilities. Without limiting the generality of this <u>Section 7.2</u>, to the extent that either the Buyer or the Seller discovers any additional assets or properties which the Parties mutually agree should have been transferred or assigned to the Buyer as Purchased Assets but were not so transferred or assigned, the Buyer and the Seller shall cooperate and execute and deliver any instruments of transfer or assignment necessary to transfer and assign such asset or property to the Buyer. If, after the Closing, the Seller receives any cash or other payments in respect of the Purchased Assets, the Seller shall pay any such amounts to the Buyer promptly after the receipt thereof and provide the Buyer with information as to the nature and source of any such amount. Without limiting the generality of this <u>Section 7.2</u>, to the extent that either the Buyer or the Seller discovers any additional assets or properties which the Parties mutually agree constitute Excluded Assets, the Buyer and the Seller shall cooperate and execute and deliver any instruments necessary to ensure the Estate's ownership and possession of such asset or property. If, after the Closing, the Buyer receives any cash or other payments in respect of the Excluded Assets, the Buyer shall pay any such amounts to the Seller promptly after the receipt thereof and provide the Seller with information as to the nature and source of any such                                                                                                amount.

CONDITIONS TO CLOSING

      Section 8.1     <u>Conditions to the Buyer's Obligations</u>. Subject to <u>Section 8.3</u>, the Buyer's obligation to consummate the Contemplated Transaction in connection with the Closing is subject to satisfaction or written waiver of the following conditions (any or all of which may be waived in writing by the Buyer in whole or in part to the extent permitted by applicable Law):each of the representations and warranties of the Seller contained in this Agreement (other than the Fundamental Representations) shall be true and correct in all respects as of the Closing (without giving effect to any qualification as to materiality, Material Adverse Effect or words of similar import included therein), as if made at and as of the Closing (except those representations and warranties that address matters only as of a specified date, the accuracy of which shall be determined as of that specified date in all respects), except where the failure to be so true and correct would not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect;

      (b)     the Fundamental Representations shall, in each case, be true and correct as of the Closing, as though such representations and warranties had been made at and as of the Closing (except that any such representations and warranties that are made as of a specified date shall be true and correct only as of such date);

      (c)     the Seller shall have performed and complied with her covenants and agreements hereunder to the extent required to be performed prior to the Closing in all material respects, and the Seller shall have caused the documents and instruments required by <u>Section 2.6(a)</u> to be delivered to the Buyer (or tendered subject only to Closing);

      (d)     no Governmental Entity of competent jurisdiction shall have enacted, issued, promulgated, enforced or entered any Order or Law (whether temporary, preliminary or permanent) that is in effect and that has the effect of making the Closing illegal or that enjoins, restrains or otherwise prohibits the consummation of the Closing;

      (e)     all consents and approvals of any Governmental Entity necessary to the consummation of the Contemplated Transaction shall have been obtained and shall be in full force and effect;

      (f)     the Sale Order shall have been entered by the Bankruptcy Court; and

ACTIVE 702698816v8

(g)     the Seller shall have delivered a certificate dated as of the Closing Date signed by Seller or an authorized representative or agent thereof to the effect that each of the conditions specified in <u>Section 8.1(a)</u>, <u>Section 8.1(b)</u>, and <u>Section 8.1(f)</u> have been satisfied.

Section 8.2     <u>Conditions to the Seller's Obligations</u>. Subject to <u>Section 8.3</u>, the Seller's obligation to consummate the Contemplated Transaction in connection with the Closing are subject to satisfaction or written waiver of the following conditions (any or all of which may be waived in writing by the Seller in whole or in part to the extent permitted by applicable Law):each of the representations and warranties of the Buyer contained in this Agreement shall be true and correct in all respects as of the Closing (without giving effect to any qualification as to materiality, Material Adverse Effect or words of similar import included therein), as if made at and as of the Closing (except those representations and warranties that address matters only as of a specified date, the accuracy of which shall be determined as of that specified date in all respects), except where the failure to be so true and correct would not, individually or in the aggregate, reasonably be expected to have a material adverse effect on the Buyer's ability to consummate the Contemplated Transaction;

(b)     the Buyer shall have performed and complied with its covenants and agreements hereunder to the extent required to be performed prior to the Closing in all material respects, and the Buyer shall have caused the documents, instruments and payments required by <u>Section 2.6(b)</u> to be delivered to the Seller (or tendered subject only to the Closing);

(c)     no Governmental Entity of competent jurisdiction shall have enacted, issued, promulgated, enforced or entered any Order or Law (whether temporary, preliminary or permanent) that is in effect and that has the effect of making the Closing illegal or that enjoins, restrains or otherwise prohibits the consummation of the Closing;

(d)     all consents and approvals of any Governmental Entity necessary to the consummation of the Contemplated Transaction shall have been obtained and shall be in full force and effect;

(e)     the Sale Order shall have been entered by the Bankruptcy Court; and

(f)     the Buyer shall have delivered a certificate dated as of the Closing Date signed by an officer of the Buyer or an authorized representative or agent thereof to the effect that each of the conditions specified in <u>Section 8.2(a)</u> and <u>Section 8.2(b)</u> have been satisfied.

Section 8.3     <u>No Frustration of Closing Conditions</u>. Neither the Buyer nor the Seller may rely on the failure of any condition to its obligation to consummate the Contemplated Transaction set forth in <u>Section 8.1</u> or <u>Section 8.2</u>, as the case may be, to be satisfied if such failure was caused by such Party's (i) failure to use its commercially reasonable efforts with respect to those matters contemplated by the applicable Sections of this Agreement to satisfy the conditions to the consummation of the Contemplated Transaction, or (ii) breach of a representation, warranty or covenant hereunder.<u>Waiver of Conditions</u>. Upon the occurrence of the Closing, any condition set forth in this <u>Article VIII</u> that was not satisfied as of the Closing will be deemed to have been waived for all purposes by the Party having the benefit of such condition          as          of          and          after          the          Closing. <u>TERMINATION</u>

Section 9.1     <u>Termination of Agreement</u>. This Agreement may be terminated and the Contemplated Transaction abandoned at any time prior to the Closing in accordance with this <u>Article IX</u>:by the mutual written consent of the Buyer, on the one hand, and the Seller, on the other hand;

ACTIVE 702698816v8

(b)    by written notice of either the Buyer or the Seller, if there shall be any Law that makes consummation of the Contemplated Transaction illegal or otherwise prohibited, or upon the issuance by any Governmental Entity of an Order restraining, enjoining, or otherwise prohibiting the consummation of the Contemplated Transaction or declaring unlawful the Contemplated Transaction; *provided* that no termination may be made by a Party under this Section 9.1(b) if the issuance of such Order was caused by the material breach of such Party;

(c)    by written notice of either the Buyer or the Seller, if the Closing shall not have occurred on or before the Outside Date; *provided*, further, that a Party shall not be permitted to terminate this Agreement pursuant to this Section 9.1(c) if the failure of the Closing to have occurred by the Outside Date (as extended) was caused by a material breach of this Agreement by such Party;

(d)    by written notice of the Buyer to the Seller if the Chapter 7 Case is dismissed or closed or if the Seller ceases to be the Trustee in the Chapter 7 Case, or if the Chapter 7 Case is converted to one under Chapter 11 of the Bankruptcy Code for any reason prior to Closing;

(e)    by the Buyer by giving written notice to the Seller at any time prior to Closing (i) in the event the Seller has breached any representation, warranty, covenant, or agreement contained in this Agreement and as a result of such breach the conditions set forth in Section 8.1 hereof, as the case may be, would not then be satisfied at the time of such breach, the Buyer has notified the Seller of the breach, and the breach has continued without cure until the earlier of (i) five (5) days prior to the Outside Date so long as all other material conditions of the Buyer to be satisfied prior to such date have been satisfied or (ii) thirty (30) days after the notice of the breach, in each case, unless such failure shall be due to the failure of the Buyer to perform or comply with any of the covenants hereof to be performed or complied with by it prior to the Closing, and such condition is not waived by the Buyer;

(f)    by the Seller by giving written notice to the Buyer at any time prior to Closing (i) in the event the Buyer has breached any representation, warranty, covenant, or agreement contained in this Agreement and as a result of such breach the conditions set forth in Section 8.2 hereof, as the case may be, would not then be satisfied at the time of such breach, the Seller has notified the Buyer of the breach, and the breach has continued without cure until the earlier of (i) five (5) days prior to the Outside Date so long as all other material conditions of the Seller to be satisfied prior to such date have been satisfied or (ii) thirty (30) days after the notice of the breach, in each case, unless such failure shall be due to the failure of the Seller to perform or comply with any of the covenants hereof to be performed or complied with by it prior to the Closing, and such condition is not waived by the Seller; and

(g)    by the Seller if there is an alternative transaction and the Seller has determined in good faith after consultation with the Seller's outside legal counsel and financial advisors that failure to consummate the alternative transaction would reasonably be expected to violate the Seller's duties under the Bankruptcy Code.

Notwithstanding anything to the contrary contained herein, a Party shall not be permitted to terminate this Agreement pursuant to this Article IX if the applicable termination was caused by the breach of such Party or such Party's gross negligence, willful misconduct, or bad faith.

Section 9.2    Procedure upon Termination. In the event of termination and abandonment by the Buyer, on the one hand, or the Seller, on the other hand, or both, pursuant to Section 9.1, written notice thereof shall forthwith be given to the other Party, and this Agreement shall terminate (subject to the

conditions of this <u>Section 9.2</u> and <u>Section 9.3</u>) and the Contemplated Transaction shall be abandoned, without further action by the Buyer or the Seller.<u>Effect of Termination</u>. In the event that this Agreement is validly terminated pursuant to a right of termination as provided in <u>Section 9.1</u>, then all rights of the Parties hereunder shall terminate and each of the Parties shall be relieved of its duties and obligations arising under this Agreement effective as of the date of such termination and such termination shall be without Liability to the Buyer or the Seller (or any other Person) and termination shall be the sole and exclusive remedy of the Parties for a breach of this Agreement; *provided, however*, notwithstanding the foregoing, that <u>Sections 9.1</u>, <u>Section 9.2</u>, this <u>Section 9.3</u>, and <u>Article X</u> shall survive any such termination and shall be enforceable hereunder and in no event shall any termination of this Agreement relieve any Party hereto of any    Liability    for    any    breach    of    this    Agreement    by    such    Party. <u>MISCELLANEOUS</u>

Section 10.1    <u>Remedies</u>. The Parties recognize that if a Party breaches or refuses to perform as set forth in this Agreement, monetary damages alone would not be adequate to compensate the non-breaching Party for their injuries. The non-breaching Party shall therefore be entitled, in addition to any other remedies that may be available, to obtain specific performance of, or to enjoin the violation of, this Agreement. If any Litigation is brought by the non-breaching Party to enforce this Agreement, the breaching Party shall waive the defense that there is an adequate remedy at Law. The Parties agree to waive any requirement for the security or posting of any bond in connection with any Litigation seeking specific performance of, or to enjoin the violation of, this Agreement. The Parties agree that the only permitted objection that they may raise in response to any action for specific performance or an injunction is that it contests the existence of a breach, threatened breach, or refusal to perform.<u>Limitation of Liability</u>. In no event shall either Party be liable to the other Party for punitive, exemplary, consequential, incidental or special damages.<u>Expenses</u>. Except as expressly provided herein, each Party shall bear its own expenses, including attorneys' fees, incurred in connection with the negotiation and execution of this Agreement, the Related Agreements and each other agreement, document and instrument contemplated by this Agreement and the consummation of the Contemplated Transaction.<u>Entire Agreement</u>. This Agreement (including the schedules and exhibits hereto and other documents specifically referred to herein) and the Related Agreements constitute the entire agreement among the Parties and supersede any prior understandings, agreements, or representations (whether written or oral) by or among the Parties, written or oral, with respect to the subject matter hereof.<u>Incorporation of Schedules, Exhibits, and Schedules</u>. The schedules, appendices and exhibits to this Agreement are incorporated herein by reference and made a part hereof.<u>Amendments and Waivers</u>. No amendment of any provision of this Agreement shall be valid unless the same shall be in writing and signed by each Party except as expressly provided herein. No waiver of any breach of this Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Agreement. No waiver by any Party of any default, misrepresentation or breach of warranty or covenant hereunder, whether intentional or not, shall be valid unless the same shall be in writing and signed by the Party making such waiver, nor shall such waiver be deemed to extend to any prior or subsequent default, misrepresentation or breach of warranty or covenant hereunder or affect in any way any rights arising by virtue of any prior or subsequent default, misrepresentation or breach of warranty or covenant. No conditions, course of dealing or performance, understanding or agreement purporting to modify, vary, explain, or supplement the terms or conditions of this Agreement shall be binding unless this Agreement is amended or modified in writing pursuant to the first sentence of this <u>Section 10.6</u> except as expressly provided herein. Except where a specific period for action or inaction is provided herein, no delay on the part of any Party in exercising any right, power or privilege hereunder shall operate as a waiver thereof.<u>Succession and Assignment</u>. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and permitted assigns. None of the Parties may assign either this Agreement or any of its rights, interests, or obligations hereunder without the prior written approval of all Parties; *provided, however*, that the Buyer shall be permitted to assign any of its rights hereunder to (i) its lenders as collateral security for Buyer's obligations under any of its secured debt financing arrangements, or (ii) one or more of its Affiliates, as designated by the Buyer in writing to the Sellers; *provided, however*,

20

the Buyer shall remain liable for all of its obligations under this Agreement after any such assignment.<u>Notices</u>. All notices, requests, demands, claims and other communications hereunder shall be in writing except as expressly provided herein. Any notice, request, demand, claim or other communication hereunder shall be deemed duly given (i) when delivered personally to the recipient; (ii) one (1) Business Day after being sent to the recipient by reputable overnight courier service (charges prepaid); (iii) when sent by email (with written confirmation of transmission); or (iv) ten (10) business days after being mailed to the recipient by certified or registered mail, return receipt requested and postage prepaid, and addressed to the intended recipient as set forth below:If to the Seller, then to:

> Christina W. Lovato, Trustee
> P.O. Box 18417
> Reno, Nevada 89511
> <u>trusteelovato@att.net</u>

> With copies (which shall not constitute notice) to:

> Jeffrey L. Hartman, Esq.
> HARTMAN & HARTMAN
> 510 W Plumb Lane, Suite B
> Reno, Nevada 89509
> <u>jlh@bankruptcyreno.com</u>

If to the Buyer, then to:

> Jordan Green
> Administrative Trustee
> Drone Company Trust
> Suite 1, 4 Sargood Street
> Toorak
> Victoria, 3142
> Australia
> <u>jordan@jordan.com.au</u>

> With copies (which shall not constitute notice) to:

> Greenberg Traurig, LLP
> 400 Capitol Mall, Suite 2400
> Sacramento, CA 95814
> Attention: Michelle Rowe Hallsten and Oscar Pinkas
> <u>hallstenm@gtlaw.com</u>
> <u>pinkaso@gtlaw.com</u>

Any Party may change the mailing address or email address to which notices, requests, demands, claims and other communications hereunder are to be delivered by giving the other Party notice in the manner set forth in this <u>Section 10.8</u>.

Section 10.9    <u>Governing Law; Jurisdiction</u>. This Agreement shall in all aspects be governed by and construed in accordance with the internal Laws of the State of Nevada without giving effect to any choice or conflict of law provision or rule (whether of the State of Nevada or any other jurisdiction) that would cause the application of the Laws of any jurisdiction other than the State of Nevada, and the obligations, rights and remedies of the Parties shall be determined in accordance with such Laws. The

ACTIVE 702698816v8

Parties agree that any Litigation one Party commences against any other Party pursuant to this Agreement shall be brought exclusively in the Bankruptcy Court and each of the Parties hereby irrevocably consents to the jurisdiction of the Bankruptcy Court (and of the appropriate appellate courts therefrom) in any such suit, action or proceeding and irrevocably waives, to the fullest extent permitted by Law, any objection that it may now or hereafter have to the laying of the venue of any such suit, action or proceeding in the Bankruptcy Court or that any such suit, action or proceeding which is brought in the Bankruptcy Court has been brought in an inconvenient forum; provided that if the Bankruptcy Court is unwilling or unable to hear any such Litigation, then the courts of the State of Nevada, sitting in Washoe County, and the federal courts of the United States of America sitting in the District of Nevada, shall have exclusive jurisdiction over such Litigation.Consent to Service of Process. Each of the Parties hereby consents to process being served by any Party, respectively, in any suit, action or proceeding by delivery of a copy thereof in accordance with the provisions of Section 10.8.WAIVERS OF JURY TRIAL. EACH OF THE PARTIES IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT, THE RELATED AGREEMENTS OR THE CONTEMPLATED TRANSACTIONS OR THEREBY.Severability. The provisions of this Agreement shall be deemed severable, and the invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provisions of this Agreement. If any provision of this Agreement, or the application thereof to any Person or any circumstance, is invalid or unenforceable, (a) the Parties shall amend this Agreement with a suitable and equitable provision that shall be substituted therefor in order to carry out to the closest extent possible, so far as may be valid and enforceable, the intent and purpose of such invalid or unenforceable provision, and (b) the remainder of this Agreement and the application of such provision to other Persons or circumstances shall not be affected by such invalidity or unenforceability, nor shall such invalidity or unenforceability in any one jurisdiction affect the validity or enforceability of such provision, or the application thereof, in any other jurisdiction.No Third-Party Beneficiaries. This Agreement shall not confer any rights or remedies upon any Person other than the Parties and their respective successors and permitted assigns, except that the Buyer Released Parties are express third party beneficiaries of Section 5.1(g) and the Estate and Debtor are express third party beneficiaries of 5.1(d).No Survival of Representations, Warranties, and Agreements. Each of the representations and warranties and the covenants and agreements (to the extent such covenant or agreement contemplates or requires performance to be completed by such Party prior to the Closing) of the Parties set forth in this Agreement or in any other document contemplated hereby, or in any certificate delivered hereunder or thereunder, will terminate effective immediately as of the Closing such that no claim for breach of any such representation, warranty, covenant or agreement, detrimental reliance or other right or remedy (whether in contract, in tort or at law or in equity) may be brought with respect thereto after the Closing (it being agreed that all such rights, remedies, recourse and entitlements are hereby expressly waived and released to the fullest extent permitted by Law effective immediately as of the Closing) in the absence of willful misconduct, intentional misconduct or fraud. Each covenant and agreement that explicitly contemplates performance after the Closing, will, in each case and to such extent, expressly survive the Closing in accordance with its terms, and if no term is specified, then for one (1) year following the Closing Date, and nothing in this Section 10.14 will be deemed to limit any rights or remedies of any Person for breach of any such surviving covenant or agreement. The Buyer and the Seller acknowledge and agree that the agreements contained in this Section 10.14: (a) require performance after the Closing to the maximum extent permitted by applicable Law; and (b) are an integral part of the Contemplated Transaction and that, without the agreements set forth in this Section 10.14, none of the Parties would enter into this Agreement.Non-Recourse. This Agreement may only be enforced against, and any Litigation based upon, arising out of or related to this Agreement may only be brought against, the Persons that are expressly named as parties to this Agreement. Except to the extent named as a party to this Agreement, and then only to the extent of the specific obligations of such parties set forth in this Agreement, no past, present or future shareholder, member, beneficiary, partner, manager, director, officer, employee, Affiliate, agent, advisor or representative of any party to this Agreement will have any Liability (whether in contract, tort, equity or

otherwise) for any of the representations, warranties, covenants, agreements or other obligations or Liabilities of any of the Parties to this Agreement or for any Litigation based upon, arising out of or related to this Agreement.<u>Construction</u>. The definitions contained in this Agreement are applicable to the singular as well as the plural forms of such terms. Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of names and pronouns shall include the plural and vice versa. The words "including" and "include" and other words of similar import shall be deemed to be followed by the phrase "without limitation." The words "herein," "hereto" and "hereby," and other words of similar import refer to this Agreement as a whole and not to any particular Article, Section, or other subdivision of this Agreement. The word "or" shall not be exclusive. Except as otherwise provided herein, references to Articles, Sections, clauses, subclauses, subparagraphs, Schedules, Exhibits, Appendices, and the Schedules herein are references to Articles, Sections, clauses, subclauses, subparagraphs, Schedules, Appendices, Exhibits and the Schedules of this Agreement. Any reference herein to any Law (or any provision thereof) shall include such Law (or any provision thereof) and any rule or regulation promulgated thereunder, in each case, including any successor thereto, and as it may be amended, modified, or supplemented from time to time. Any reference herein to "dollars" or "$" means United States dollars.<u>Computation of Time</u>. In computing any period of time prescribed by or allowed with respect to any provision of this Agreement that relates to the Seller or the Chapter 7 Case, the provisions of Rule 9006(a) of the Federal Rules of Bankruptcy Procedure shall apply.<u>Mutual Drafting</u>. Each of the Parties has participated jointly in the negotiation and drafting of this Agreement. In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement.<u>Headings; Table of Contents</u>. The section headings and the table of contents contained in this Agreement are inserted for convenience only and shall not affect in any way the meaning or interpretation of this Agreement.<u>Counterparts; Facsimile and Email Signatures</u>. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. This Agreement or any counterpart may be executed and delivered by facsimile or email with scan attachment copies, each of which shall be deemed an original.[*SIGNATURE PAGES FOLLOW*]

23

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the date first above written.

SELLER:

By: _____

Name:  Christina Lovato, Trustee
Title:   Chapter 7 Trustee for the Bankruptcy
Estate of Flirtey Holdings, Inc., dba SkyDrop

[Signature Page to Asset Purchase Agreement]

<u>BUYER</u>:

DRONE COMPANY LIQUIDATING TRUST

By: _Jordan Green_____    _____
Name: Jordan Green
Title Administrative Trustee

[Signature Page to Asset Purchase Agreement]

EXHIBIT A

INTELLECTUAL PROPERTY ASSIGNMENT AGREEMENT

(See attached)

## INTELLECTUAL PROPERTY ASSIGNMENT AGREEMENT

This Intellectual Property Assignment Agreement (this "Agreement") is made and entered into as of March __31__, 2025 (the "Effective Date") by and between Christina W. Lovato, not individually, but solely as the chapter 7 trustee (the "Assignor") for the bankruptcy estate of Flirtey Holdings, Inc., aka Skydrop, a Delaware corporation, and Drone Company Liquidating Trust (together with its permitted successors, designees, and assigns, the "Assignee", and collectively with the Assignor, the "Parties").

WHEREAS, pursuant to that certain Asset Purchase Agreement, dated as of even date herewith, by and among Assignor and Assignee, among others (the "Purchase Agreement"), pursuant to which, among other things, the Assignor agreed to sell, convey, assign, transfer, and deliver, and desires to sell, convey, assign, transfer, and deliver all right, title, and interest in and to the intellectual property assets set forth on Schedule A attached hereto and all goodwill associated therewith (collectively, the "Intellectual Property Assets"), including the patents and patent applications described therein (collectively, the "Patents") and inventions described and claimed in the Patents (the "Inventions"), including divisionals, continuations-in-part, provisionals, reissues, reexaminations or interferences thereof to the Assignee, and the Assignee desires to acquire from the Assignor all right, title, and interest in and to the Intellectual Property Assets.

NOW, THEREFORE, in consideration of the mutual promises and covenants set forth herein and in the Purchase Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1.      Definitions.  Capitalized terms used in this Agreement that are not defined in the body of this Agreement have the meanings given to them in the Purchase Agreement.

2.      Assignment.  The Assignor does hereby irrevocably agree to and hereby irrevocably sells, conveys, assigns, transfers, and delivers to the Assignee, its successors and assigns, and the Assignee hereby purchases and accepts from the Assignor, all right, title, and interest in and to the Intellectual Property Assets, including (a) the Patents and the Inventions, (b) any patents that may be granted for the Inventions in the United States and all other countries, territories and jurisdictions of the world, (c) any and all royalties, fees, income, payments, and other proceeds now or hereafter due or payable with respect to any and all of the foregoing, and (d) any and all claims and causes of action with respect to any of the foregoing, whether accruing before, on, or after the date hereof, including all rights to and claims for damages, restitution, and injunctive and other legal and equitable relief for past, present, and future infringement, dilution, misappropriation, violation, misuse, breach, or default, with the right but no obligation to sue for such legal and equitable relief and to collect, or otherwise recover, any such damages.  The Assignor further authorizes the Assignee to file for and request that the United States Patent and Trademark Office, any successor offices thereto or any other corresponding bodies in each of the other countries, territories and jurisdictions of the world issue any and all patents resulting from the Patents to the Assignee.

3.      Further Assurances.  The Assignor shall take such steps and actions, and provide such cooperation and assistance at the Assignor's expense to the Assignee and its successors,

assigns, and legal representatives, in connection with the Inventions and the Patents, or for any inventions and discoveries derived therefrom, as may be necessary to effect, evidence, or perfect the assignment of the Patents and the Inventions to the Assignee or any assignee or successor thereto, including, but not limited to: the execution and delivery of any affidavits, declarations, oaths, exhibits, assignments, powers of attorney, documents in connection with claims or provisions of the International Convention for the Protection of Industrial Property or similar treaties and agreements, or other lawful papers; the execution and delivery of all papers necessary in connection with any administrative or judicial proceedings; and the provision of information and testimony and cooperation in every way in obtaining and producing evidence and prosecuting such proceedings. Assignor hereby irrevocably appoints Assignee, and any officer or agent of Assignee, with full power of substitution, as its true and lawful attorney-in-fact with full, irrevocable power and authority in the place and stead of Assignor and in the name of Assignor or in its own name for the purpose of carrying out the terms of this Section 3. The foregoing power of attorney is irrevocable and coupled with an interest.

4.    <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the domestic Laws of the State of Delaware, without giving effect to any choice of law or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction) that would cause the application of the Laws of any jurisdiction other than the State of Delaware.

5.    <u>No Conflict</u>. Nothing contained in this Agreement shall supersede any of the obligations, agreements, covenants, or representations and warranties of the Assignor or the Assignee contained in the Purchase Agreement, and this Agreement is made and accepted subject to all the terms, conditions, representations and warranties set forth in the Purchase Agreement, all of which survive execution and delivery of this Agreement as set forth in the Purchase Agreement. In the event of any conflict between the terms of this Agreement and the terms of the Purchase Agreement, the terms of the Purchase Agreement shall control.

6.    <u>No Modifications</u>. This Agreement may not be supplemented, altered or modified in any manner except by a writing signed by both parties hereto.

7.    <u>Successors and Assigns</u>. This Agreement shall bind and shall inure to the benefit of the respective parties and their assigns, transferees, and successors.

8.    <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but both of which together will constitute one and the same instrument. This Agreement may be executed by facsimile, photo, or electronic signature and such facsimile, photo, or electronic signature shall constitute an original for all purposes.

[*Remainder of this page intentionally left blank.*]

- 2 -

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first written above.

ASSIGNOR:

By: _____

Name: Christina Lovato, Trustee

Title:   Chapter 7 Trustee for the Bankruptcy
Estate of Flirtey Holdings, Inc., dba SkyDrop

ASSIGNEE:

DRONE COMPANY LIQUIDATING TRUST

By: _____

Name:  Jordan Green

Title:  Administrative Trustee

- 3 -

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first written above.

ASSIGNOR:


By: _____
Name:  Christina Lavato, Trustee
Title:    Chapter 7 Trustee for the Bankruptcy Estate of Flirtey Holdings, Inc., dba SkyDrop


ASSIGNEE:

DRONE COMPANY LIQUIDATING TRUST


By: _____
Name:  Jordan Green
Title:  Administrative Trustee

- 3 -

SCHEDULE A

Intellectual Property Assets

The following Intellectual Property and other assets and all rights, claims, causes of action, rights of recovery, and goodwill associated therewith:

ISSUED PATENTS AND PENDING PATENT APPLICATIONS

| Flirtey Ref | Invention Title | Country | Application No. | Application Priority Date | Grant/Issue No. | Grant/Issue Date | Status | Applicant/Owner |
|---|---|---|---|---|---|---|---|---|
| EP8.1 | Windshield | European Patent Office | 18779954.9 | 2018-09-13 | | | Application Allowed | Flirtey Holdings, Inc. |
| EP7.0 | Beyond LoS Detection System | European Patent Office | 18779953.1 | 2018-09-13 | | | Application Published | Flirtey Holdings, Inc. |
| EP8.0 | Package Delivery | European Patent Office | 19783765.1 | 2019-09-13 | | | Examination in Progress | Flirtey Holdings, Inc. |
| EP6.0 | Delivery Surface Detection | European Patent Office | 18780281.4 | 2018-09-13 | | | Examination in Progress | Flirtey Holdings, Inc. |
| US7.0 | Beyond LoS Detection System | United States of America | 17/674,249 | 2022-02-17 | | | Examination in Progress | Flirtey Holdings, Inc. |
| US8.1 | Windshield | United States of America | 16/817,412 | 2020-03-12 | | | Examination in Progress | Flirtey Holdings, Inc. |
| EP8.2 | Emergency UAV | European Patent Office | 19795065.2 | 2019-09-13 | | | Examination in Progress | Flirtey Holdings, Inc. |
| US8.0 | Package Delivery | United States of America | 17/198,083 | 2021-03-10 | 12,154,060 | 2024-11-26 Issue Notice Received | | Flirtey Holdings, Inc. |
| US2 | Padding | United States of America | 17/113,896 | 2020-12-07 | 12,084,180 | 2024-09-10 Granted/Issued | | Flirtey Holdings, Inc. |
| US8.2 | Emergency UAV | United States of America | 17/199,154 | 2021-03-11 | 12,049,328 | 2024-07-30 Granted/Issued | | Flirtey Holdings, Inc. |
| US6.0 | Delivery Surface Detection | United States of America | 16/817,427 | 2020-03-12 | 12,037,117 | 2024-07-16 Granted/Issued | | Flirtey Holdings, Inc. |
| EP2 | Padding | Germany | 19736853.3 | 2019-06-05 | EP3802317 | 2024-01-31 Granted/Issued | | Flirtey Holdings, Inc. |
| EP2 | Padding | France | 19736853.3 | 2019-06-05 | EP3802317 | 2024-01-31 Granted/Issued | | Flirtey Holdings, Inc. |
| EP2 | Padding | United Kingdom | 19736853.3 | 2019-06-05 | EP3802317 | 2024-01-31 Granted/Issued | | Flirtey Holdings, Inc. |
| US3.1 | Delivery Mechanism | United States of America | 16/687,427 | 2019-11-18 | 11,840,333 | 2023-12-12 Granted/Issued | | Flirtey Holdings, Inc. |
| US8.3 | Centering Mechanism | United States of America | 16/817,415 | 2020-03-12 | 11,713,136 | 2023-08-01 Granted/Issued | | Flirtey Holdings, Inc. |
| EP1.1 | Parachute Deployment System for an Unmanned Aerial Vehicle | Germany | 16856325.2 | 2016-10-14 | EP3362356 | 2023-06-14 Granted/Issued | | Flirtey Holdings, Inc. |
| EP1.1 | Parachute Deployment System for an Unmanned Aerial Vehicle | France | 16856325.2 | 2016-10-14 | EP3362356 | 2023-06-14 Granted/Issued | | Flirtey Holdings, Inc. |
| EP1.1 | Parachute Deployment System for an Unmanned Aerial Vehicle | United Kingdom | 16856325.2 | 2016-10-14 | EP3362356 | 2023-06-14 Granted/Issued | | Flirtey Holdings, Inc. |
| EP1.2 | Parachute Control System for an Unmanned Aerial Vehicle | Germany | 16856334.4 | 2016-10-14 | EP3362360 | 2023-06-14 Granted/Issued | | Flirtey Holdings, Inc. |
| EP1.2 | Parachute Control System for an Unmanned Aerial Vehicle | France | 16856334.4 | 2016-10-14 | EP3362360 | 2023-06-14 Granted/Issued | | Flirtey Holdings, Inc. |
| EP1.2 | Parachute Control System for an Unmanned Aerial Vehicle | United Kingdom | 16856334.4 | 2016-10-14 | EP3362360 | 2023-06-14 Granted/Issued | | Flirtey Holdings, Inc. |
| DE3.1 | Delivery Mechanism | Germany | 18734685.3 | 2018-06-01 | EP3630607 | 2022-08-10 Granted/Issued | | Flirtey Holdings, Inc. |
| FR3.1 | Delivery Mechanism | France | 18734685.3 | 2018-06-01 | EP3630607 | 2022-08-10 Granted/Issued | | Flirtey Holdings, Inc. |
| GB3.1 | Delivery Mechanism | United Kingdom | 18734685.3 | 2018-06-01 | EP3630607 | 2022-08-10 Granted/Issued | | Flirtey Holdings, Inc. |
| US1.1(Continuation) | Continuation - Parachute Control System For An Unmanned Aerial Vehicle | United States of America | 16/694,705 | 2019-11-25 | 11,338,923 | 2022-05-24 Granted/Issued | | Flirtey Holdings, Inc. |
| DE8.3 | Centering Mechanism | Germany | 18800350.3 | 2018-09-13 | EP3681803 | 2022-05-11 Granted/Issued | | Flirtey Holdings, Inc. |
| FR8.3 | Centering Mechanism | France | 18800350.3 | 2018-09-13 | EP3681803 | 2022-05-11 Granted/Issued | | Flirtey Holdings, Inc. |
| GB8.3 | Centering Mechanism | United Kingdom | 18800350.3 | 2018-09-13 | EP3681803 | 2022-05-11 Granted/Issued | | Flirtey Holdings, Inc. |
| AU1.2 | Parachute Control System for an Unmanned Aerial Vehicle | Australia | 2016337362 | 2016-10-14 | 2016337362 | 2021-06-24 Granted/Issued | | Flirtey Holdings, Inc. |
| AU1.1 | Parachute Deployment System for an Unmanned Aerial Vehicle | Australia | 2016338690 | 2016-10-14 | 2016338690 | 2020-11-26 Granted/Issued | | Flirtey Holdings, Inc. |
| US1.2 | Parachute Control System for an Unmanned Aerial Vehicle | United States of America | 15/294,489 | 2016-10-14 | 10,703,494 | 2020-07-07 Granted/Issued | | Flirtey Holdings, Inc. |
| US3.0 | Package Delivery Mechanism in an Unmanned Aerial Vehicle | United States of America | 15/612,789 | 2017-06-02 | 10,618,655 | 2020-04-14 Granted/Issued | | Flirtey Holdings, Inc. |
| ZA1.2 | Parachute Control System for an Unmanned Aerial Vehicle | South Africa | 2018/01885 | 2016-10-14 | 2018/01885 | 2019-10-30 Granted/Issued | | Flirtey Holdings, Inc. |
| ZA1.1 | Parachute Deployment System for an Unmanned Aerial Vehicle | South Africa | 2018/01884 | 2016-10-14 | 2018/01884 | 2019-09-25 Granted/Issued | | Flirtey Holdings, Inc. |
| US1.1 | Parachute Deployment System for an Unmanned Aerial Vehicle | United States of America | 15/294,479 | 2016-10-14 | 10,112,721 | 2018-10-30 Granted/Issued | | Flirtey Holdings, Inc. |

REGISTERED TRADEMARKS AND PENDING TRADEMARK APPLICATIONS

| Mark Name | Image | Country | File Date | Serial No. | Reg. Date | Reg. No. | Ren. Due | Classes | Status |
|---|---|---|---|---|---|---|---|---|---|
| FLIRTEY | FLIRTEY | USA | 2018-06-08 | 87955021 | 2022-05-03 | 6719080 | 2028-05-03 | 012, 035, 039 | Live |
| ANYTHING ANYTIME ANYWHERE | ANYTHING ANYTIME ANYWHERE | USA | 2018-06-22 | 88010983 | 2020-08-18 | 6130863 | 2026-08-18 | 012 | Live |

DOMAIN NAMES

1. Flirtey.com
2. getskydrop.com

<u>DOCUMENTATION</u>

All lists, books, files, documents, correspondence and records and other information in the Assignor's possession pertaining to the Purchased Assets, whether in electronic or hard copy.

SCHEDULE A

Intellectual Property Assets

The following Intellectual Property and other assets and all rights, claims, causes of action, rights of recovery, and goodwill associated therewith:

ISSUED PATENTS AND PENDING PATENT APPLICATIONS

| Flirtey Ref | Invention Title | Country | Application No. | Application Priority Date | Grant/Issue No. | Grant/Issue Date | Status | Applicant/Owner |
|---|---|---|---|---|---|---|---|---|
| EP8.1 | Windshield | European Patent Office | 18779954.9 | 2018-09-13 | | | Application Allowed | Flirtey Holdings, Inc. |
| EP7.0 | Beyond LoS Detection System | European Patent Office | 18779993.1 | 2018-09-13 | | | Application Published | Flirtey Holdings, Inc. |
| EP8.0 | Package Delivery | European Patent Office | 18783765.1 | 2019-09-13 | | | Examination in Progress | Flirtey Holdings, Inc. |
| EP6.0 | Delivery Surface Detection | European Patent Office | 18780281.4 | 2018-09-13 | | | Examination in Progress | Flirtey Holdings, Inc. |
| US7.0 | Beyond LoS Detection System | United States of America | 17/674,349 | 2022-02-17 | | | Examination in Progress | Flirtey Holdings, Inc. |
| US8.1 | Windshield | United States of America | 16/817,412 | 2020-03-12 | | | Examination in Progress | Flirtey Holdings, Inc. |
| EP8.2 | Emergency UAV | European Patent Office | 19795065.2 | 2019-09-13 | | | Examination in Progress | Flirtey Holdings, Inc. |
| US8.0 | Package Delivery | United States of America | 17/198,083 | 2021-03-10 12,154,060 | | 2024-11-26 Issue Notice Received | | Flirtey Holdings, Inc. |
| US2 | Padding | United States of America | 17/113,896 | 2020-12-07 12,084,180 | | 2024-09-10 Granted/Issued | | Flirtey Holdings, Inc. |
| US8.2 | Emergency UAV | United States of America | 17/199,154 | 2021-03-11 12,049,328 | | 2024-07-30 Granted/Issued | | Flirtey Holdings, Inc. |
| US6.0 | Delivery Surface Detection | United States of America | 16/817,427 | 2020-03-12 12,037,117 | | 2024-07-16 Granted/Issued | | Flirtey Holdings, Inc. |
| EP2 | Padding | Germany | 19736853.3 | 2019-06-05 EP3802317 | | 2024-01-31 Granted/Issued | | Flirtey Holdings, Inc. |
| EP2 | Padding | France | 19736853.3 | 2019-06-05 EP3802317 | | 2024-01-31 Granted/Issued | | Flirtey Holdings, Inc. |
| EP2 | Padding | United Kingdom | 19736853.3 | 2019-06-05 EP3802317 | | 2024-01-31 Granted/Issued | | Flirtey Holdings, Inc. |
| US3.1 | Delivery Mechanism | United States of America | 16/687,427 | 2019-11-18 11,840,333 | | 2023-12-12 Granted/Issued | | Flirtey Holdings, Inc. |
| US8.3 | Centering Mechanism | United States of America | 16/817,415 | 2020-03-12 11,713,136 | | 2023-08-01 Granted/Issued | | Flirtey Holdings, Inc. |
| EP1.1 | Parachute Deployment System for an Unmanned Aerial Vehicle | Germany | 16856325.2 | 2016-10-14 EP3362356 | | 2023-06-14 Granted/Issued | | Flirtey Holdings, Inc. |
| EP1.1 | Parachute Deployment System for an Unmanned Aerial Vehicle | France | 16856325.2 | 2016-10-14 EP3362356 | | 2023-06-14 Granted/Issued | | Flirtey Holdings, Inc. |
| EP1.1 | Parachute Deployment System for an Unmanned Aerial Vehicle | United Kingdom | 16856325.2 | 2016-10-14 EP3362356 | | 2023-06-14 Granted/Issued | | Flirtey Holdings, Inc. |
| EP1.2 | Parachute Control System for an Unmanned Aerial Vehicle | Germany | 16856334.4 | 2016-10-14 EP3362360 | | 2023-06-14 Granted/Issued | | Flirtey Holdings, Inc. |
| EP1.2 | Parachute Control System for an Unmanned Aerial Vehicle | France | 16856334.4 | 2016-10-14 EP3362360 | | 2023-06-14 Granted/Issued | | Flirtey Holdings, Inc. |
| EP1.2 | Parachute Control System for an Unmanned Aerial Vehicle | United Kingdom | 16856334.4 | 2016-10-14 EP3362360 | | 2023-06-14 Granted/Issued | | Flirtey Holdings, Inc. |
| DE3.1 | Delivery Mechanism | Germany | 18734685.3 | 2018-06-01 EP3630607 | | 2022-08-10 Granted/Issued | | Flirtey Holdings, Inc. |
| FR3.1 | Delivery Mechanism | France | 18734685.3 | 2018-06-01 EP3630607 | | 2022-08-10 Granted/Issued | | Flirtey Holdings, Inc. |
| GB3.1 | Delivery Mechanism | United Kingdom | 18734685.3 | 2018-06-01 EP3630607 | | 2022-08-10 Granted/Issued | | Flirtey Holdings, Inc. |
| US1.1(Continuation) | Continuation - Parachute Control System For An Unmanned Aerial Vehicle | United States of America | 16/694,705 | 2019-11-25 11,338,923 | | 2022-05-24 Granted/Issued | | Flirtey Holdings, Inc. |
| DE8.3 | Centering Mechanism | Germany | 18800350.3 | 2018-09-13 EP3681803 | | 2022-05-11 Granted/Issued | | Flirtey Holdings, Inc. |
| FR8.3 | Centering Mechanism | France | 18800350.3 | 2018-09-13 EP3681803 | | 2022-05-11 Granted/Issued | | Flirtey Holdings, Inc. |
| GB8.3 | Centering Mechanism | United Kingdom | 18800350.3 | 2018-09-13 EP3681803 | | 2022-05-11 Granted/Issued | | Flirtey Holdings, Inc. |
| AU1.2 | Parachute Control System for an Unmanned Aerial Vehicle | Australia | 2016337362 | 2016-10-14 2016337362 | | 2021-06-24 Granted/Issued | | Flirtey Holdings, Inc. |
| AU1.1 | Parachute Deployment System for an Unmanned Aerial Vehicle | Australia | 2016338690 | 2016-10-14 2016338690 | | 2021-06-03 Granted/Issued | | Flirtey Holdings, Inc. |
| US1.2 | Parachute Control System for an Unmanned Aerial Vehicle | United States of America | 15/294,489 | 2016-10-14 10,703,494 | | 2020-07-07 Granted/Issued | | Flirtey Holdings, Inc. |
| US3.0 | Package Delivery Mechanism in an Unmanned Aerial Vehicle | United States of America | 15/612,789 | 2017-06-02 10,618,655 | | 2020-04-14 Granted/Issued | | Flirtey Holdings, Inc. |
| ZA1.2 | Parachute Control System for an Unmanned Aerial Vehicle | South Africa | 2018/01885 | 2016-10-14 2018/01885 | | 2019-10-30 Granted/Issued | | Flirtey Holdings, Inc. |
| ZA1.1 | Parachute Deployment System for an Unmanned Aerial Vehicle | South Africa | 2018/01884 | 2016-10-14 2018/01884 | | 2019-09-25 Granted/Issued | | Flirtey Holdings, Inc. |
| US1.1 | Parachute Deployment System for an Unmanned Aerial Vehicle | United States of America | 15/294,479 | 2016-10-14 10,112,721 | | 2018-10-30 Granted/Issued | | Flirtey Holdings, Inc. |

REGISTERED TRADEMARKS AND PENDING TRADEMARK APPLICATIONS

| Mark Name | Image | Country | File Date | Serial No. | Reg. Date | Reg. No. | Ren. Due | Classes | Status |
|---|---|---|---|---|---|---|---|---|---|
| FLIRTEY | FLIRTEY | USA | 2018-06-08 | 87955021 | 2022-05-03 | 6719080 | 2028-05-03 | 012, 035, 039 | Live |
| ANYTHING ANYTIME ANYWHERE | ANYTHING ANYTIME ANYWHERE | USA | 2018-06-22 | 88010983 | 2020-08-18 | 6130863 | 2026-08-18 | 012 | Live |

DOMAIN NAMES

1. Flirtey.com
2. getskydrop.com

ACTIVE 706021812v3

<u>DOCUMENTATION</u>

All lists, books, files, documents, correspondence and records and other information in the Assignor's possession pertaining to the Purchased Assets, whether in electronic or hard copy.

<u>EXHIBIT B</u>

SALE ORDER

(*See attached*)

1
2
3
4
5
6
7
8
9

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

10

In re:

11

FLIRTEY HOLDINGS, INC.,
aka SKYDROP,

12

Debtor.

13

14

Case No.: 24-50176-hlb

Chapter 7

Hearing Date: February 25, 2025
Hearing Time: 2:30 p.m.

15

**ORDER APPROVING AND AUTHORIZING SALE OF ASSETS
<u>FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES</u>**

16

17

18

19

20

21

22

23

24

25

26

Upon the *Trustee's Motion for Entry of an Order Approving and Authorizing Sale of Assets Free and Clear of Liens, Claims, and Encumbrances and Granting Related Relief* [Docket No. 32] (the "<u>Motion</u>")[1] filed by Christina Lovato, the chapter 7 trustee ("<u>Trustee</u>") of the bankruptcy estate of Flirtey Holdings, Inc. aka SkyDrop (the "<u>Debtor</u>") seeking, among other things, entry of this order (the "<u>Sale Order</u>"), pursuant to sections 105 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "<u>Bankruptcy Code</u>"), Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), authorizing and approving the sale of the Purchased Assets to the Drone Company Liquidating Trust, or its permitted assignee (the "<u>Purchaser</u>"), as reflected in the Asset Purchase Agreement; and the Court having conducted a hearing (the "<u>Sale</u>

27

28

---

[1] Capitalized terms used but not otherwise defined herein have the meanings given to them in the Asset Purchase Agreement (as defined below).

Hearing") to consider the sale of the Purchased Assets (the "Sale") on February 25, 2025, at which time all interested parties had an opportunity to be heard with respect to the Motion and the Sale; and the Court having reviewed and considered (i) the Motion and the exhibits thereto, (ii) the Asset Purchase Agreement, dated as of March __, 2025, and related exhibits and schedules (filed at Docket No. 33-1), a copy of which is attached hereto as **Exhibit 1** (together, including related and ancillary documents, agreements, and instruments, as may be modified, amended, or restated from time to time, such as the Related Agreements, the "Asset Purchase Agreement"), by and between the Purchaser and the Trustee, as seller (in such capacity, the "Seller"), whereby the Seller has agreed to sell all of the estate's right, title and interest in and to the Purchased Assets to the Purchaser, on the terms and conditions set forth in the Asset Purchase Agreement and this Sale Order, and (iii) any objections, statements, reservations of rights, or other filings in respect of the Motion, and (iv) the record of the Sale Hearing, including the arguments and representations of counsel made, and the evidence proffered or adduced, at the Sale Hearing; and it appearing that due and sufficient notice of the Motion, the Asset Purchase Agreement, and this Sale Order have been provided; and all objections, statements, reservations of rights, or other filings in respect of the Sale Motion having been withdrawn, resolved, or overruled; and, after due deliberation, it appearing that the relief granted herein is in the best interests of the estate and its creditors and all parties in interest; and good and sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED:**

A.    The findings and conclusions set forth herein and stated on the record at the Sale Hearing constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014.

B.    To the extent that any findings of fact constitute conclusions of law, they are adopted as such. To the extent any conclusions of law constitute findings of fact, they are adopted as such.

**Jurisdiction and Venue**

C.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in the Court under 28 U.S.C. §§ 1408 and 1409.

D.      The statutory and legal predicates for the relief sought in the Motion and this Sale Order are sections 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 9014.

**Secured Obligations**

E.      In or around October 2022, Debtor entered into that certain Note Purchase Agreement dated (the "Note Purchase Agreement"), Security Agreement, and Patent, Copyright and Trademark Security Agreement dated (collectively, as amended, supplemented or otherwise modified from time to time, the "Prepetition Secured Note Purchase Agreements") with the holders of the 6% Secured Convertible Promissory Notes (the "Secured Notes") issued by the Debtor (including successors and assigns, and each of their respective agents, members, managers, officers, directors, and employees, collectively, the "Prepetition Secured Noteholders") in accordance with the Note Purchase Agreement (and together with all other related finance and security documents, the "Prepetition Secured Note Documents").

F.      Pursuant to the Prepetition Secured Note Documents, the Debtor granted to the Prepetition Secured Noteholders, to secure Debtor's obligations under the Secured Notes, a continuing first-priority lien and security interest in and on the Debtor's right, title and interest in and to (i) the Intellectual Property Collateral (as defined in the Prepetition Secured Note Documents), and (ii) the proceeds thereof, whether now owned or existing or hereafter acquired or arising, regardless of where located. All liens granted under and pursuant to the Prepetition Secured Note Documents shall collectively be referred to herein as the "Prepetition Liens." All collateral referred to in this paragraph F shall be referred to herein as the "Prepetition Collateral."

G.     On May 2, 2024, Jordan Green, in his capacity as the noteholder representative, filed a proof of claim number 3 in the Chapter 7 Case on behalf of the Prepetition Secured Noteholders in an amount not less than $8,783,697.85, plus other unliquidated amounts, reflecting the amounts owing under the Prepetition Secured Note Documents as the Petition Date (the "Prepetition Secured Obligations")  The amounts owing to the Secured Parties has increased postpetition pursuant to and under the Prepetition Secured Note Documents (the "Postpetition Secured Obligations", and, together with the Prepetition Secured Obligations, the "Secured Obligations").

H.     The Seller has acknowledged, *inter alia*, the priority, validity, and extent of the Prepetition Liens in the Prepetition Collateral.  In addition, the Seller acknowledged that the Debtor and its estate were obligated to the Prepetition Secured Noteholders in the amount of not less than $8,783,697.85 on account of the Secured Obligations.

I.     The Purchased Assets constitute Prepetition Collateral securing the Secured Obligations.

## Notice

J.     As evidenced by the certificates of service filed with the Court [Docket No. 35], and based upon the Court's findings at the Sale Hearing, due, proper, timely, adequate, and sufficient notice of the Motion, the Sale Hearing, the Sale pursuant to this Sale Order and the Asset Purchase Agreement has been provided in accordance with sections 102(1) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 9014, to each party in interest entitled to such notice.  Notice was good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, the Asset Purchase Agreement, the Sale, the Sale Order and the Sale Hearing is, or shall be, required.

## The Sale Process

K.     The estate assets, excluding certain cash, cash equivalents, claims, and causes of action, consist primarily of the Purchased Assets.

L.     The Trustee determined, in a proper exercise of her business judgment, that the most

suitable course of action to liquidate the estate is the prompt sale of the Purchased Assets to the Purchaser.

M.       The Purchased Assets are property of the Debtor's bankruptcy estate under 11 U.S.C. § 541.

N.       The Trustee marketed the Purchased Assets and conducted the Sale of the Purchased Assets in a commercially reasonable manner.

## Sale Transaction

O.       The Trustee, as Seller, and the Purchaser shall enter into the Asset Purchase Agreement, which contemplates the Sale of the Purchased Assets to Purchaser, on the terms and conditions of the Asset Purchase Agreement, free and clear of claims, liens and liabilities other than Permitted Liens[2] (collectively, "Encumbrances"), to the fullest extent permitted by any applicable Law (including free and clear of contingent Claims to the fullest extent permitted by any applicable Law).

P.       The Purchase Price for the Purchased Assets is $14,724.44, consisting of $5,000.00, the Trustee's counsel's fees and expenses, and the amount of the Secured Obligations, which shall be deemed released and extinguished against the Debtor and its estate after the Closing.

Q.       Based upon the information provided by the Purchaser to date, the Asset Purchase Agreement was negotiated, proposed, and entered into by and among the Trustee and Purchaser without collusion, in good faith, and from arm's length bargaining positions.

R.       The Trustee demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale of the Purchased Assets because, among other reasons, (i) the Asset Purchase Agreement constitutes the highest or otherwise best offer for the Purchased Assets, (ii) the Asset Purchase Agreement and the Closing thereon will present the best opportunity to

---

[2]    For any and all purposes of this Sale Order, "Permitted Liens" shall mean only those Permitted Liens that are permitted to encumber the Purchased Assets post-Closing, and shall exclude any Permitted Liens that are to be released on or before Closing, as to each of the foregoing, pursuant to the terms and conditions of the Asset Purchase Agreement.

realize the value of the Purchased Assets, and (iii) any other transaction would not have yielded as favorable an economic result.

S.    The Purchaser is purchasing the Purchased Assets in good faith, is a good-faith purchaser within the meaning of section 363(m) of the Bankruptcy Code, and is not an "insider" (as defined under section 101(31) of the Bankruptcy Code) of the Debtor, and therefore is entitled to the full benefits and protections of section 363(m) of the Bankruptcy Code, and otherwise has proceeded in good faith in all respects in connection with the Sale in that: (i) the Purchaser recognized that the Trustee was free to deal with any other party interested in acquiring the Purchased Assets; (ii) all payments to be made by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the Sale have been disclosed; (iii) the Purchaser has not violated section 363(n) of the Bankruptcy Code by any action or inaction; and (iv) the negotiation and execution of the Asset Purchase Agreement, including the Sale contemplated thereby, were at arms'-length and in good faith.

T.    The Asset Purchase Agreement and the transactions contemplated thereby cannot be avoided under section 363(n) of the Bankruptcy Code.  The Trustee and the Purchaser and their respective agents, representatives, and affiliates have not engaged in any conduct that would cause or permit the Asset Purchase Agreement or the consummation of the transactions contemplated thereby to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

U.    The consideration provided by the Purchaser pursuant to the Asset Purchase Agreement: (i) is fair and adequate, and constitutes reasonably equivalent value, under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia (including the Uniform Fraudulent Transfer Act and its equivalents); and (ii) will provide a greater recovery for the Debtor's estate and creditors than would be provided by any other reasonably, practicable available alternative.

V.       The Purchaser would not have entered into the Asset Purchase Agreement and will not consummate the transaction described therein, thus adversely affecting the estate and its creditors, if the sale of the Purchased Assets was not free and clear of all Encumbrances to the fullest extent permitted by any applicable Law (including free and clear of contingent Claims to the fullest extent permitted by any applicable Law).

W.       The Trustee may sell the Purchased Assets free and clear of all Encumbrances against the Debtor, the estate, or any of the Purchased Assets (unless otherwise assumed in, or permitted by, the Asset Purchase Agreement) because, in each case, one or more of the standards set forth in section 363(f) of the Bankruptcy Code has been satisfied. Those holders of Encumbrances against the Debtor, the estate, or any of the Purchased Assets who did not object, or who withdrew their objections, to the Sale or the Motion are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of such Encumbrances who may have been able to object fall within one or more of the other subsections of section 363(f).  All other holders of Encumbrances could be compelled in a legal or equitable proceeding to accept money satisfaction of such claim or interest, or otherwise fall within section 363(f) of the Bankruptcy Code.

X.       Except as specifically set forth in this Sale Order and the Asset Purchase Agreement, the Closing will not subject the Purchaser to any debts, liabilities, obligations, commitments, responsibilities, or claims of any kind or nature whatsoever, whether known or unknown, contingent or liquidated, or otherwise, existing as of the Closing, of or against the Debtor, the estate or any other person by reason of such transfer based on any legal or equitable theory, including liabilities based on any theory of antitrust or successor or transferee liability.

Y.       The Trustee has, upon entry of this Order and pursuant to section 704 of the Bankruptcy Code, (i) full power and authority to execute and deliver the Asset Purchase Agreement, and (ii) taken all action necessary to authorize and approve the Asset Purchase Agreement and the consummation of the transaction contemplated thereby. No consents or approvals, other than those expressly provided

for in the Asset Purchase Agreement, are required for the Trustee to consummate the Sale, execute the Asset Purchase Agreement, or consummate the transaction contemplated thereby.

Z.      To maximize the value of the Purchased Assets it is essential that the Sale occur within the time constraints set forth in the Asset Purchase Agreement. Time is of the essence in consummating the Sale. Given all of the circumstances of the Chapter 7 Case and the adequacy and fair value of the Purchase Price and other consideration under the Asset Purchase Agreement, the proposed Sale constitutes a reasonable and sound exercise of the Trustee's business judgment and should be approved.  Accordingly, cause exists to waive the stay to the extent necessary, as contemplated by Bankruptcy Rules 4001(a), and 6004(h) to permit the immediate effectiveness of this Sale Order and permit the Closing as soon as reasonably practicable.

## NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

### General Provisions

1.      The relief requested in the Motion, is **GRANTED** as set forth herein and on the record of the Sale Hearing, which is incorporated herein as if fully set forth in this Sale Order.

2.      All objections to, statements or reservations of rights regarding, or other responses to the Motion or the relief requested therein, the Asset Purchase Agreement, the Sale, the entry of this Sale Order, the relief granted herein, or the occurrence of the Closing, that have not been withdrawn, waived, adjourned, or settled by inclusion in this Sale Order, announcement during the Sale Hearing, or by stipulation filed with the Court, including, without limitation, any and all reservations of rights included in any such objection or otherwise, are hereby denied and overruled on the merits with prejudice. Those parties who did not object or withdrew their objections to the Motion or the entry of this Sale Order, are deemed to have consented to the relief granted herein for all purposes, including without limitation, pursuant to section 363(f)(2) of the Bankruptcy Code.

### Approval of the Sale Transaction

3.      The Asset Purchase Agreement, the related documents and instruments contemplated

therein, and all of the terms and conditions thereof are approved in all respects. The failure to specifically include any particular provision of the Asset Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that all the terms and conditions of the Asset Purchase Agreement be authorized and approved in their entirety as if incorporated at length herein.

4.    The Trustee's entry into the Asset Purchase Agreement and any Closing on the transaction contemplated thereunder are approved pursuant to sections 105(a), 363 and 704 of the Bankruptcy Code.

5.    The Trustee is authorized and directed under sections 105(a) and 363 of the Bankruptcy Code to take any and all actions necessary or appropriate to (a) consummate and close the Sale pursuant to and in accordance with the terms and conditions of this Sale Order and the Asset Purchase Agreement; (b) transfer and assign all right, title, and interest of the bankruptcy estate to the Purchased Assets in accordance with the terms and conditions of this Sale Order and the Asset Purchase Agreement; and (c) execute and deliver, perform under, consummate, and implement this Sale Order and the Asset Purchase Agreement and all additional instruments and documents that may be reasonably necessary or desirable to implement this Sale Order, the Asset Purchase Agreement and the Sale, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by this Sale Order and the Asset Purchase Agreement. Execution and delivery by the Trustee under Bankruptcy Rule 7070 shall have the same effect as if done by the party ordered to execute and deliver such document, but who failed to comply with this Sale Order within a reasonable amount of time after written request by the Trustee (the "Non-Compliant Party"). The Trustee shall have no liability or responsibility for any liability or other obligation of or to the Non-Compliant Party arising under or related to the Trustee's execution and delivery of such documents; and all parties, including but not limited to the Non-Compliant Party, are prohibited from asserting, prosecuting, or otherwise pursuing any claim against the Trustee arising from execution and delivery of such

documents.

**<u>Transfer of the Purchased Assets to Purchaser Free and Clear of Encumbrances</u>**

6.      Pursuant to sections 105(a), 363(b), 363(f) and 365(f) of the Bankruptcy Code, upon the Closing the Purchased Assets shall be transferred to Purchaser free and clear of all Encumbrances accruing, arising, or relating thereto any time prior to the Closing to the fullest extent permitted by any applicable Law (including free and clear of contingent Claims to the fullest extent permitted by any applicable Law).  The Purchase Price constitutes valid and proper consideration pursuant to sections 363(b) and 363(k) of the Bankruptcy Code.

7.      Nothing in this Sale Order or in the Asset Purchase Agreement releases, nullifies, precludes, limits, or enjoins the enforcement of any police or regulatory power of a governmental unit (as defined in 11 U.S.C. § 101(27)) that any entity would be subject to as the post-sale owner, co-owner, tenancy-in-common interest holder, or operator of property after the Closing; <u>provided however</u>, that this Sale Order approves the Sale of the Purchased Assets free and clear of any and all Encumbrances in respect of the Purchased Assets, the Debtor, the Debtor's estate or the Seller, other than Permitted Liens, to the fullest extent permitted by any applicable Law (including free and clear of contingent Claims to the fullest extent permitted by any applicable Law).  Nothing in this Order shall relieve any entity from any obligation to address or comply with information requests or inquiries from any governmental unit.

8.      All parties-in-interest, including all debt holders, equity holders, governmental, tax, and regulatory authorities, lenders, trade, and other creditors, (a) holding claims against the Debtor or the estate, whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated, accruing or arising before the Closing or (b) with Encumbrances in the Purchased Assets existing before the Closing, are prohibited from asserting, prosecuting, or otherwise pursuing such claims or Encumbrances against the Purchaser or any Purchased Assets.

9.      The Sale of the Purchased Assets pursuant to this Sale Order shall vest the Purchaser with valid and indefeasible title to the Purchased Assets and shall be a legal, valid, and effective transfer of the Purchased Assets, free and clear of all Encumbrances to the fullest extent permitted by any applicable Law (including free and clear of contingent Claims to the fullest extent permitted by any applicable Law).   Notwithstanding the foregoing, or anything to the contrary, however, (i) Permitted Liens shall be assumed by Purchaser at Closing and, therefore, shall be assertable against Purchaser and the Purchased Assets post-Closing, and (ii) Excluded Assets and Excluded Liabilities are not part of the Sale and shall remain assets or liabilities of the Debtor's estate post-Closing.

10.      All entities that are presently, or on the Closing may be, in possession of some or all of the Purchased Assets to be sold, transferred, or conveyed (wherever located) to the Purchaser pursuant to this Sale Order and the Asset Purchase Agreement are hereby directed to surrender possession of the Purchased Assets to the Purchaser on the Closing Date.

### **Miscellaneous Provisions**

11.      The Purchase Price for the Purchased Assets under the Asset Purchase Agreement is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code or other applicable law.   The Asset Purchase Agreement was not entered into, and the Sale is not being consummated, for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or any other applicable non-bankruptcy law.

12.      This Sale Order (a) is and shall be effective as a determination that, on the Closing, all Encumbrances existing against any Purchased Assets before the Closing have been unconditionally released, discharged, and terminated as to the Purchased Assets and (b) is and shall be binding on, and shall govern acts of, all entities, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of fees, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities, who may be required by operation of law, the duties of their office, or contract, to accept, file, register

or otherwise record or release any documents or instruments that reflect the Purchaser is the owner of the Purchased Assets free and clear of Encumbrances. Each federal, state, and local governmental agency or department is hereby directed to accept all documents and instruments necessary and appropriate to consummate the transaction contemplated by the Asset Purchase Agreement.

13.    The Purchaser is not, and shall not be deemed to, (a) be the successor to the Debtor or its estate, (b) have, *de facto* or otherwise, merged with or into the Debtor or its estate, or (c) be a mere continuation, alter ego or substantial continuation of the Debtor or the estate, or the enterprise of the Debtor or the estate, in each case, under any theory of law or equity, including, but not limited to, as a result of any action taken in connection with this Sale Order, the Asset Purchase Agreement or any of the transactions or documents ancillary thereto or contemplated thereby or in connection with the acquisition of the Purchased Assets. Subject to the Permitted Liens and other terms and conditions of the Asset Purchase Agreement, the Purchaser shall not be liable for any claims against the Trustee, Seller, Debtor or estate, and the Purchaser shall have no successor, transferee, or vicarious liabilities of any kind or character, whether known or unknown, now existing or hereafter arising, whether fixed or contingent, with respect to the Trustee, Seller, Debtor or estate or any obligations of any of the foregoing arising before the Closing.

14.    Subject to the Permitted Liens and other terms and conditions of the Asset Purchase Agreement, the transfer of the Purchased Assets pursuant to the Asset Purchase Agreement and this Sale Order shall not subject the Purchaser to any claim, cause of action, indebtedness, or other liability with respect to the business or operation of the Debtor or the estate before the Closing or by reason of such transfer under the Bankruptcy Code or applicable federal and state law, based, in whole or in part, directly or indirectly, on any theory of law or equity, including any theory of equitable subordination, successor or transferee liability, or vicarious liability.

15.    No person or entity shall take (or fail to take) any action to prevent, enjoin, or otherwise interfere with the Closing and consummation of the transactions contemplated in or by the Asset

Purchase Agreement or this Sale Order.

16.     Upon consummation of the Sale, if any person or entity that has filed financing statements, mortgages, Litigation, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Encumbrances against or in the Purchased Assets shall not have delivered to the Trustee prior to the Closing Date, in proper form for filing and executed by the appropriate parties, amendments, termination statements, instruments of satisfactions, releases of all Encumbrances that the person or entity has with respect to the Purchased Assets (unless otherwise assumed in, or permitted by, the Asset Purchase Agreement), or otherwise, then (a) the Trustee is hereby authorized to coordinate with such person or entity to do so for seven days and thereafter, if still not completed, to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Purchased Assets, and (b)  the Purchaser is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Encumbrances against or in the Purchased Assets of any kind or nature (except as otherwise assumed in, or permitted by, the Asset Purchase Agreement); provided that notwithstanding anything in this Sale Order or the Asset Purchase Agreement to the contrary, the provisions of this Sale Order shall be self-executing, and neither the Trustee nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Sale Order.  For the avoidance of doubt, upon consummation of the Sale, to the extent not completed pursuant to (a) above, then the Purchaser is authorized to coordinate with such person or entity seven days to and thereafter, if still not completed, file termination statements, lien terminations, or other amendments in any required jurisdiction to remove and record, notice filings or financing statements recorded to attach, perfect, or otherwise notice any Encumbrances that are extinguished or otherwise released pursuant to this Sale Order under section 363(f) of the Bankruptcy Code.

17.    The Asset Purchase Agreement may be modified, amended, or supplemented through a written document signed by the parties in accordance with the terms thereof without further order of the Court, <u>provided</u> that any such modification, amendment, or supplement is neither material nor changes the economic substance of the transactions contemplated under Asset Purchase Agreement and Sale Order.

18.    The Trustee is authorized and directed under section 363(b)(1) of the Bankruptcy Code to perform all of her obligations in connection with the Asset Purchase Agreement and this Sale Order in accordance with the terms and conditions thereof and to execute such documents and take such other actions necessary to effectuate the Sale transaction.

19.    As a good-faith purchaser of the Purchased Assets, and that the Purchaser has not colluded with any other parties interested in the Purchased Assets:

a.    The Sale is undertaken by the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the Sale free and clear of all Encumbrances unless otherwise assumed in, or permitted by, the Asset Purchase Agreement), unless such authorization and consummation of such Sale are duly stayed pending such appeal prior to Closing. The Purchaser is a good-faith Purchaser within the meaning of section 363(m) of the Bankruptcy Code, and as such is entitled to the full benefits and protections of such section.

b.    The sale of the Purchased Assets may not be avoided pursuant to section 363(n) of the Bankruptcy Code.

20.    No bulk sales law or similar law shall apply in any way to the transactions contemplated by the Sale, the Asset Purchase Agreement, the Motion, or this Sale Order. The assignment, transfer and/or sale of the Purchased Assets: (i) is in exchange for the Purchase Price and so no withholding of U.S. federal income Tax pursuant to the IRC is required, and (ii) constitutes a bankruptcy sale,

casual sale or occasional sale, and so is exempt from state sales and use Tax or other Transfer Tax.

21.    The Purchaser shall succeed to and control any and all rights, claims, causes of action and defenses in respect of any privilege or confidentiality that relates to any of the Purchased Assets or Permitted Liens.

22.    This Sale Order and the Asset Purchase Agreement shall be binding in all respects upon all parties in interest, creditors of (whether known or unknown), and holders of equity interests in, the Debtor or the estate, any holders of claims or liens in, against, or on all or any portion of the Purchased Assets, the Purchaser, the Debtor, its estate, their respective affiliates and subsidiaries, and all successors and assigns of the foregoing.

23.    To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Motion or in the Chapter 7 Case, the terms of this Sale Order shall govern.

24.    To the extent there are any inconsistencies between the terms of this Sale Order and the Asset Purchase Agreement, the terms of this Sale Order shall govern.

25.    Notwithstanding the provisions of the Bankruptcy Rules or the Local Rules, this Sale Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14) day stay provided in Bankruptcy Rules 6004(h) is hereby expressly waived and shall not apply.

26.    This Court shall retain jurisdiction, including after the closing of the Chapter 7 Case, to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Asset Purchase Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtor or estate is a party or which has been assumed and assigned to the Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale.

SCHEDULE 2.1

Purchased Assets

The following Intellectual Property and other assets and all rights, claims, causes of action, rights of recovery, and goodwill associated therewith:

ISSUED PATENTS AND PENDING PATENT APPLICATIONS

| Flirtey Ref | Invention Title | Country | Application No. | Application Priority Date | Grant/Issue No. | Grant/Issue Date | Status | Applicant/Owner |
|---|---|---|---|---|---|---|---|---|
| EP8.1 | Windshield | European Patent Office | 18779954.9 | 2018-09-13 | | | Application Allowed | Flirtey Holdings, Inc. |
| EP7.0 | Beyond LoS Detection System | European Patent Office | 18779953.1 | 2018-09-13 | | | Application Published | Flirtey Holdings, Inc. |
| EP8.0 | Package Delivery | European Patent Office | 19783765.1 | 2019-09-13 | | | Examination in Progress | Flirtey Holdings, Inc. |
| EP6.0 | Delivery Surface Detection | European Patent Office | 18780281.4 | 2018-09-13 | | | Examination in Progress | Flirtey Holdings, Inc. |
| US7.0 | Beyond LoS Detection System | United States of America | 17/674,249 | 2022-02-17 | | | Examination in Progress | Flirtey Holdings, Inc. |
| US8.1 | Windshield | United States of America | 16/817,412 | 2020-03-12 | | | Examination in Progress | Flirtey Holdings, Inc. |
| EP8.2 | Emergency UAV | European Patent Office | 19795065.2 | 2019-09-13 | | | Examination in Progress | Flirtey Holdings, Inc. |
| US8.0 | Package Delivery | United States of America | 17/198,083 | 2021-03-10 | 12,154,060 | 2024-11-26 | Issue Notice Received | Flirtey Holdings, Inc. |
| US2 | Padding | United States of America | 17/113,896 | 2020-12-07 | 12,084,180 | 2024-09-10 | Granted/Issued | Flirtey Holdings, Inc. |
| US8.2 | Emergency UAV | United States of America | 17/199,154 | 2021-03-11 | 12,049,328 | 2024-07-30 | Granted/Issued | Flirtey Holdings, Inc. |
| US6.0 | Delivery Surface Detection | United States of America | 16/817,427 | 2020-03-12 | 12,037,117 | 2024-07-16 | Granted/Issued | Flirtey Holdings, Inc. |
| EP2 | Padding | Germany | 19736853.3 | 2019-06-05 | EP3802317 | 2024-01-31 | Granted/Issued | Flirtey Holdings, Inc. |
| EP2 | Padding | France | 19736853.3 | 2019-06-05 | EP3802317 | 2024-01-31 | Granted/Issued | Flirtey Holdings, Inc. |
| EP2 | Padding | United Kingdom | 19736853.3 | 2019-06-05 | EP3802317 | 2024-01-31 | Granted/Issued | Flirtey Holdings, Inc. |
| US3.1 | Delivery Mechanism | United States of America | 16/687,427 | 2019-11-18 | 11,840,333 | 2023-12-12 | Granted/Issued | Flirtey Holdings, Inc. |
| US8.3 | Centering Mechanism | United States of America | 16/817,415 | 2020-03-12 | 11,713,136 | 2023-08-01 | Granted/Issued | Flirtey Holdings, Inc. |
| EP1.1 | Parachute Deployment System for an Unmanned Aerial Vehicle | Germany | 16856325.2 | 2016-10-14 | EP3362356 | 2023-06-14 | Granted/Issued | Flirtey Holdings, Inc. |
| EP1.1 | Parachute Deployment System for an Unmanned Aerial Vehicle | France | 16856325.2 | 2016-10-14 | EP3362356 | 2023-06-14 | Granted/Issued | Flirtey Holdings, Inc. |
| EP1.1 | Parachute Deployment System for an Unmanned Aerial Vehicle | United Kingdom | 16856325.2 | 2016-10-14 | EP3362356 | 2023-06-14 | Granted/Issued | Flirtey Holdings, Inc. |
| EP1.2 | Parachute Control System for an Unmanned Aerial Vehicle | Germany | 16856334.4 | 2016-10-14 | EP3362360 | 2023-06-14 | Granted/Issued | Flirtey Holdings, Inc. |
| EP1.2 | Parachute Control System for an Unmanned Aerial Vehicle | France | 16856334.4 | 2016-10-14 | EP3362360 | 2023-06-14 | Granted/Issued | Flirtey Holdings, Inc. |
| EP1.2 | Parachute Control System for an Unmanned Aerial Vehicle | United Kingdom | 16856334.4 | 2016-10-14 | EP3362360 | 2023-06-14 | Granted/Issued | Flirtey Holdings, Inc. |
| DE3.1 | Delivery Mechanism | Germany | 18734685.3 | 2018-06-01 | EP3630607 | 2022-08-10 | Granted/Issued | Flirtey Holdings, Inc. |
| FR3.1 | Delivery Mechanism | France | 18734685.3 | 2018-06-01 | EP3630607 | 2022-08-10 | Granted/Issued | Flirtey Holdings, Inc. |
| GB3.1 | Delivery Mechanism | United Kingdom | 18734685.3 | 2018-06-01 | EP3630607 | 2022-08-10 | Granted/Issued | Flirtey Holdings, Inc. |
| US1.1(Continuation) | Continuation - Parachute Control System For An Unmanned Aerial Vehicle | United States of America | 16/694,705 | 2019-11-25 | 11,338,923 | 2022-05-24 | Granted/Issued | Flirtey Holdings, Inc. |
| DE8.3 | Centering Mechanism | Germany | 18800350.3 | 2018-09-13 | EP3681803 | 2022-05-11 | Granted/Issued | Flirtey Holdings, Inc. |
| FR8.3 | Centering Mechanism | France | 18800350.3 | 2018-09-13 | EP3681803 | 2022-05-11 | Granted/Issued | Flirtey Holdings, Inc. |
| GB8.3 | Centering Mechanism | United Kingdom | 18800350.3 | 2018-09-13 | EP3681803 | 2022-05-11 | Granted/Issued | Flirtey Holdings, Inc. |
| AU1.2 | Parachute Control System for an Unmanned Aerial Vehicle | Australia | 2016337362 | 2016-10-14 | 2016337362 | 2021-06-24 | Granted/Issued | Flirtey Holdings, Inc. |
| AU1.1 | Parachute Deployment System for an Unmanned Aerial Vehicle | Australia | 2016338690 | 2016-10-14 | 2016338690 | 2021-06-03 | Granted/Issued | Flirtey Holdings, Inc. |
| US1.2 | Parachute Control System for an Unmanned Aerial Vehicle | United States of America | 15/294,489 | 2016-10-14 | 10,703,494 | 2020-07-07 | Granted/Issued | Flirtey Holdings, Inc. |
| US3.0 | Package Delivery Mechanism in an Unmanned Aerial Vehicle | United States of America | 15/612,789 | 2017-06-02 | 10,618,655 | 2020-04-14 | Granted/Issued | Flirtey Holdings, Inc. |
| ZA1.2 | Parachute Control System for an Unmanned Aerial Vehicle | South Africa | 2018/01885 | 2016-10-14 | 2018/01885 | 2019-10-30 | Granted/Issued | Flirtey Holdings, Inc. |
| ZA1.1 | Parachute Deployment System for an Unmanned Aerial Vehicle | South Africa | 2018/01884 | 2016-10-14 | 2018/01884 | 2019-09-25 | Granted/Issued | Flirtey Holdings, Inc. |
| US1.1 | Parachute Deployment System for an Unmanned Aerial Vehicle | United States of America | 15/294,479 | 2016-10-14 | 10,112,721 | 2018-10-30 | Granted/Issued | Flirtey Holdings, Inc. |

REGISTERED TRADEMARKS AND PENDING TRADEMARK APPLICATIONS

| Mark Name | Image | Country | File Date | Serial No. | Reg. Date | Reg. No. | Ren. Due | Classes | Status |
|---|---|---|---|---|---|---|---|---|---|
| FLIRTEY | FLIRTEY | USA | 2018-06-08 | 87955021 | 2022-05-03 | 6719080 | 2028-05-03 | 012, 035, 039 | Live |
| ANYTHING ANYTIME ANYWHERE | ANYTHING ANYTIME ANYWHERE | USA | 2018-06-22 | 88010983 | 2020-08-18 | 6130863 | 2026-08-18 | 012 | Live |

<u>DOMAIN NAMES</u>

1.  Flirtey.com
2.  getskydrop.com

<u>DOCUMENTATION</u>

All lists, books, files, documents, correspondence and records and other information in the Seller's possession pertaining to the Purchased Assets, whether in electronic or hard copy.